IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: APPLICATION OF PSA LLC,

    Applicant,

MAKSAT IDENOV,                    Case No. _____

    Respondent.

_____/

**ORDER GRANTING APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782(a) PERMITTING PSA LLC TO TAKE DISCOVERY FROM MR. MAKSAT IDENOV FOR ASSISTANCE IN SWISS PROCEEDING**

THIS MATTER came before the Court upon PSA LLC's ("PSA") *ex parte* Application for an Order under 28 U.S.C. § 1782(a) for discovery assistance with respect to a foreign legal proceeding in Switzerland (the "Application"). By its Application, PSA seeks discovery from Mr. Maksat Idenov. Upon review of the Application, PSA's supporting memorandum, and the legal authorities associated with 28 U.S.C. § 1782(a), and being apprised of all pertinent matters, it is hereby ORDERED and ADJUDGED that:

1. The Application is GRANTED. The Court finds the requirements of § 1782(a) are met because: (a) Mr. Maksat Idenov resides or may be found in the Southern District of Texas; (b) the discovery sought is for use in an ongoing proceeding in Switzerland; and (c) PSA, as the plaintiff in Switzerland, is an interested person within the meaning of § 1782(a). The Court further finds that the discretionary factors for a grant of § 1782(a) assistance set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249 (2004), weigh in favor of granting the Application. In exercising that discretion, the Court is guided by the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our

courts." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (internal quotations omitted); *see also Tex. Keystone Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553-54 (5th Cir. 2012).

2. PSA is GRANTED leave to serve Mr. Maksat Idenov subpoenas, consistent with Rules 34(a) and 45 of the Federal Rules of Civil Procedure, for the production of documents and electronically stored information responsive to the category of information and requests set forth in Exhibit A to this Order.

3. PSA is GRANTED leave to serve Mr. Maksat Idenov a subpoena for his videotaped deposition, conducted in accordance with Rules 30 and 45 of the Federal Rules of Civil Procedure, regarding:

   a. Mr. Maksat Idenov's knowledge and/or understanding of the existence, nature, and scope of the services provided under consultancy and/or any other similar agreements executed by the defendants in the Swiss proceeding, any related persons, and/or their employees in relation to the Kashagan and Karachaganak projects, and any payments made thereunder. This includes, without limitation, Mr. Maksat Idenov's knowledge and/or understanding in relation to various individuals and entities involved on behalf of the defendants in the Swiss proceeding, and their respective roles in the corruption and bribery scheme.

   b. Mr. Maksat Idenov's knowledge and/or understanding of the existence, nature, and scope of the services provided under consultancy and/or any other similar agreements executed by Unaoil, any related persons, and/or their employees in relation to the Kashagan and Karachaganak projects, and any payments made thereunder.

   c. Mr. Maksat Idenov's knowledge and/or understanding of any of Petrofac, JV Skema-Tozzi, Breda, Tenaris Global Services S.A., their related persons, employes, and associates' involvement in the Kashagan and Karachaganak projects, including, without limitation their reliance on the defendants in the Swiss proceeding, their related persons, employees, and/or associates in order to secure or attempt to secure contracts and/or contract amendments in connection with the Kashagan and Karachaganak projects.

   d. Mr. Maksat Idenov's knowledge and/or understanding of the bribery and corruption scheme affecting the Kashagan and Karachaganak projects starting in 2006, including, without limitation, Mr. Maksat Idenov's knowledge and/or understanding that certain employees of Agip, Eni, and the contracting

2

companies were accepting bribes from the defendants in the Swiss proceeding in return for the award of Kashagan and Karachaganak project contracts and/or contract amendments. This includes, without limitation, Mr. Maksat Idenov's knowledge and/or understanding of the involvement in the corruption and bribery scheme by the corrupt Eni and Agip executives identified in the Italian investigations: (1) Guido Michelotti, then Chairman of Agip Caspian Sea BV; (2) Umberto Carrara, then CEO of Agip KCO; (3) Luigi Diamante, then Project Director at Agip KCO in charge of evaluating proposals and recommendations for assigning contracts; (4) Paolo Dentali, Head of Corporate Procurement AGIP KCO, Eni; (5) Ernesto Ferlenghi, then head of the Eni representative office in Moscow; and (6) Diego Braghi working at various Eni companies, including Agip KCO.

e. Mr. Maksat Idenov's knowledge and/or understanding of any other vendors, their related persons, employes, and associates' reliance on the defendants in the Swiss proceeding, their related persons, employees, and/or associates in order to secure or attempt to secure contracts and/or contract amendments in connection with the Kashagan and Karachaganak projects, and their resulting involvement in the Kashagan and Karachaganak projects, if any.

f. The documents produced by Mr. Maksat Idenov pursuant to Section 2 above.

4. The Court shall retain jurisdiction over this matter for the purpose of enforcing this Order and assessing any supplemental requests for discovery that may be requested by PSA.

IT IS SO ORDERED on this ___ day of _____, 2025.

_____
UNITED STATES DISTRICT JUDGE

## Exhibit A – Requests for the Production of Documents

**Definitions and Instructions**

1. "PSA" refers to the Applicant in this 28 U.S.C. § 1782(a) proceeding PSA LLC, and any agent, representative, or other person representing it.

2. "Mr. Maksat Idenov" refers to the Respondent in this 28 U.S.C. § 1782(a) proceeding Mr. Maksat Idenov, and any of his agents and/or representatives.

3. "NCSPSA" refers to the North Caspian Sea Production Sharing Agreement made on 18 November 1997, as from time to time amended and/or supplemented.

4. "FPSA" refers to the Final Production Sharing Agreement made on 18 November 1997, as from time to time amended and/or supplemented.

5. "Kashagan project" refers to the full scope of works, services, purchases and any other actions, as the case may be, aimed at the exploration and development of the Kashagan oil field under the terms and conditions of the NCSPSA.

6. "Karachaganak project" refers to the full scope of works, services, purchases and any other actions, as the case may be, aimed at the exploration and development of the Karachaganak oil field under the terms and conditions of the FPSA.

7. "Contracting Companies" refers to the companies incorporated for the purposes of the NCSPSA and/or the FPSA, subsidiaries and/or affiliates of some of the largest oil and gas companies in the world, acting collectively as the Contractor under the NCSPSA and/or the FPSA.

8. "Agip" refers to AGIP Caspian Sea B.V., a company incorporated in the Netherlands, a wholly-owned subsidiary of Eni S.p.A.

9. "Eni" refers to Eni S.p.A., one of the seven "supermajor" oil companies in the world, and a parent company of Agip.

10. "Petrofac" refers to Petrofac Ltd., a company incorporated in the UK and involved in works under the Kashagan project.

11. "JV Skema-Tozzi" refers to an Italian joint-venture formed by Skema S.p.A. and Tozzi Sud S.p.A. in charge of the electrical systems on the Kashagan project.

12. "Tenaris" refers to a global manufacturer of pipes and related services for the energy sector. It is a majority-owned (60.45%) subsidiary of the Italian headquartered group Techint. The Tenaris group company, Tenaris Global Services S.A, has won several contracts in Kashagan.

13. "Breda" refers to Breda Energia S.p.A., and its Kazakh branch, Aksay-registered Breda Energia Sesto Industria SpA, which have won several contracts in Kashagan.

14. "Unaoil" refers to a Monaco-based entity at the heart of large-scale corruption schemes, including in Kazakhstan, that was operating similar to and in conjunction with the defendants in the Swiss proceeding.

15. "Employee" includes persons either formerly or presently employed by the entities to which that term refers to in the Requests below.

16. "Person" means any individual, firm, company, partnership, corporation, proprietorship, association, or other organization or entity.

17. "Vendor" means any supplier, provider, general contractor, or subcontractor of PSA, or the Contracting Companies, as the case may be.

18. "Document" means any writing, drawing, recording, graph, chart, photograph, video, sound recording, image, and other data or data compilation, as defined in FED. R. CIV. P. 34(a) and FED. R. EVID. 1001(a)-(c), in your actual or constructive possession, custody, care, or control, which pertains directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents. Document includes both originals and duplicates, as those terms are defined in FED. R. EVID. 1001(d) and (e).

19. "Communication" is synonymous with "document."

20. In the event that any document responsive to this Request is not produced:
    (A)   identify each such document;

    (B)   set forth the reason why the document has not been produced, and
          (1)   if the document is not produced on the basis of a claim of privilege or for any other reason, produce a privilege log identifying the document with particularity, including the addressor, the addressee, the author of the document, the number of pages, attachments and appendices, the date of the document, its general subject matter, the identity of each individual or entity to whom the document or a copy was transmitted, shown, or to whom the information therein was disclosed or discussed, and state the nature of the privilege asserted, if any;
          (2)   if the document is in possession of a person or entity other than Mr. Maksat Idenov over which Mr. Maksat Idenov has no authority or control:
                (i)    set forth whether and when the document was in Mr. Maksat Idenov's possession;
                (ii)   set forth what disposition was made of the document; and
                (iii)  identify the person or entity which is presently in possession of the document;
          (3)   if the document was destroyed:

5

    (i) set forth the date of destruction;
    (ii) set forth the manner of destruction;
    (iii) set forth the reason for destruction;
    (iv) set forth the name and address of the person authorizing the destruction; and
    (v) set forth the name and address of the person destroying the document.

21. Documents responsive to these Requests shall be produced as they are kept in the ordinary course of business or in an orderly manner, and with appropriate markings or other identification so that PSA and its attorneys are able to identify the source of the document and the number of the Request to which it responds. Distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, documents should be logically unitized).

22. The Requests below do not encompass the production of information protected by the attorney-client privilege. To the extent privileged information is responsive to a Request, Mr. Maksat Idenov shall produce non-privileged, responsive information along with a privilege log compliant with number 20(B)(1) above.

23. Drafts of documents that may constitute the subject matter of any individual Request below shall be produced.

24. Unless specified below, the relevant time period for these Requests is June 2007 to the date of compliance herewith (the "Time Period").

**SPECIFIC DOCUMENT REQUESTS**

*Documents concerning the consultancy agreements and/or any other similar agreements executed by the defendants in the Swiss proceeding, Breda, Petrofac, Tenaris, JV Skema-Tozzi, Unaoil, any related persons, and/or their employees, and/or any of the defendants' in the Swiss proceeding other activities in the context of the Kashagan and Karachaganak projects*

1. Communications between Mr. Maksat Idenov and the defendants in the Swiss proceeding, Unaoil, Breda, Petrofac, Tenaris, JV Skema-Tozzi, and/or their related persons and/or their employees in relation to the consultancy and/or any other similar agreements executed by the defendants in the Swiss proceeding, any related persons, and/or their employees, and/or in relation to any of the defendants' in the Swiss proceeding other activities in the context of the Kashagan and Karachaganak projects.

2. Documents sufficient to identify the defendants' in the Swiss proceeding, Unaoil, and/or any related person's clients, their employees, associates, and/or agents, in the context of the Kashagan and Karachaganak projects. Without limitation, this Request extends to documents evidencing or relating to payments that the defendants in the Swiss proceeding, their related persons, employees and/or associates made to or received from any such vendors, their related persons, employees, and/or associates.

3. Communications between the defendants in the Swiss proceeding and Mr. Maksat Idenov discussing or pertaining to the efforts by the defendants in the Swiss proceeding to introduce one or more of Petrofac, Breda, Tenaris, JV Skema-Tozzi, their related persons, employees, and/or associates to Mr. Maksat Idenov and/or the Contracting Companies, including documents referring to such communications.

4. Documents discussing or reflecting Mr. Maksat Idenov's knowledge that one or more of the contracts, or contract amendments, executed by any of Petrofac, Breda, Tenaris, JV Skema-Tozzi, their related persons, employees, and/or associates in connection with the Kashagan and Karachaganak projects were secured (i) improperly; (ii) as the result of bribery or corruption; and/or (iii) in violation of the NCSPSA and/or the FPSA.

5. Documents relating to meetings both within and without Kazakhstan, to which Mr. Maksat Idenov was privy, involving the defendants in the Swiss proceeding, their related persons, employees, and/or associates, and/or any of Petrofac, Breda, Tenaris, JV Skema-Tozzi, their related persons, employees, and/or associates, and/or the Contracting Companies, Agip, Eni, including persons acting on their behalf or for their benefit. Without limitation, this Request extends to calendar appointments, calendar invites, or calendar events relating to such meetings.

*Documents concerning Agip, Eni, and/or other Contracting Companies' employees and their associates*

6. Documents sufficient to identify Agip, Eni, and/or other Contracting Companies' employees that the defendants in the Swiss proceeding, their related persons, employees, and/or associates directly or indirectly engaged with in respect of any contracts and/or contract amendments on the Kashagan and Karachaganak projects.

7. Documents containing, discussing, or relating to communications occurring outside of Agip, Eni, and/or other Contracting Companies' official email system or communication channels between the defendants in the Swiss proceeding, their related persons, employees, and/or associates, and Agip, Eni, and/or other Contracting Companies' employees, including individuals acting on their behalf or for their benefit, regarding Kashagan and Karachaganak related business and/or contracts. Without limitation, this Request extends to communications sent to or from various email accounts, as well as cellular text messages, and messages exchanged through electronic applications, or other electronic means.

*Documents concerning bribe payments and/or other irregularities*

8. Documents discussing or relating to the offer or payment, directly or indirectly, of bribes (kickbacks or commissions) and/or conferring of any other benefits to, or their solicitation or acceptance by, the defendants in the Swiss proceeding, Unaoil, Petrofac, Breda, Tenaris, JV Skema-Tozzi, any other vendors on the Kashagan and Karachaganak projects, and/or employees of the Contracting Companies, including, without limitation, the corrupt Eni and Agip executives identified in the Italian investigations: (1) Guido Michelotti, then Chairman of Agip Caspian Sea BV; (2) Umberto Carrara, then CEO of Agip KCO; (3) Luigi Diamante, then Project Director at Agip KCO in charge of evaluating proposals and recommendations for assigning contracts; (4) Paolo Dentali, Head of Corporate Procurement AGIP KCO, Eni; (5) Ernesto Ferlenghi, then head of the Eni representative office in Moscow; and (6) Diego Braghi working at various Eni companies, including Agip KCO. Without limitation, this Request extends to individuals acting for the benefit of or entities beneficially owned by employees of such entities. Without limitation, this Request extends to documents showing or relating to Mr. Maksat Idenov's knowledge that bribes were offered or solicited, paid or accepted in connection with Kashagan and Karachaganak project related contracts.

9. Documents showing the payments, bank transfers and/or any other money and/or asset flows in relation to the Kashagan and Karachaganak projects between the defendants in the Swiss proceeding, any related persons, and/or their employees, Petrofac, Breda, Tenaris, JV Skema-Tozzi, and Mr. Maksat Idenov, and/or employees of the Contracting Companies, including, without limitation, the corrupt Eni and Agip executives identified in the Italian investigations as described in the Request 8 above.

10. Documents sufficient to show irregularities in the Contracting Companies' processes and contracts and/or contract amendments executed with "assistance" of Mr. Hormoz Vasfi and his associates in relation to the Kashagan and Karachaganak projects by Petrofac, Breda, Tenaris, and JV Skema-Tozzi, including payments thereunder. Without limitation, this Request extends to documents showing or relating to Mr. Maksat Idenov's knowledge and/or understanding of the existence of such irregularities.