**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

IN RE: APPLICATION OF PSA LLC,

Applicant,

MAKSAT IDENOV, Case No. _______________

Respondent.
_______________________________________________/

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782(a) PERMITTING PSA LLC TO TAKE DISCOVERY FROM MR. MAKSAT IDENOV FOR ASSISTANCE IN SWISS PROCEEDING**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND FACTS: PSA WAS THE VICTIM OF A COMPLEX, CROSS-BORDER ILLEGAL CORRUPTION AND BRIBERY SCHEME ..... 2

- A. Background on the Kashagan and Karachaganak projects ..... 2
- B. The Defendants' corruption scheme ..... 3
- C. The Swiss proceeding ..... 4
- D. The evidence sought from Mr. Maksat Idenov is relevant to and will be used in the ongoing Swiss proceeding ..... 4

III. SECTION 1782(a) ENTITLES PSA TO TAKE DISCOVERY FROM MR. MAKSAT IDENOV ..... 5

- A. PSA meets the statutory requirements of § 1782(a) ..... 7
- B. The Court should exercise its discretion to grant the Application ..... 8
  1. The information sought is located in this District and inaccessible absent § 1782(a) assistance ..... 8
  2. The nature of the Swiss proceeding supports § 1782(a) assistance ..... 9
  3. The Application does not seek to circumvent foreign proof-gathering restrictions ..... 10
  4. The information sought is within the scope of permissible discovery ..... 11

IV. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Asta Medica, S.A.*,
981 F.2d 1 (1st Cir. 1992) ....................6

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
747 F.3d 1262 (11th Cir. 2014) ....................6

*In re Application of HydroDive Nigeria, Ltd.*,
No. 13-MC-0477, 2013 WL 12155021 (S.D. Tex. May 29, 2013) ....................10

*In re B&C Holding GmbH*,
No. CV 23-365-JWD-EWD, 2023 WL 8171733 (M.D. La. Nov. 24, 2023) ....................11

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
55 F.4th 469 (5th Cir. 2022) ....................2

*Banco Mercantil de Norte, S.A. v. Paramo*,
114 F.4th 757 (5th Cir. 2024) ....................1

*In re Bayer AG*,
146 F.3d 188 (3d Cir. 1998) ....................5, 8

*In re Bindhoff*,
No. 2:24-MC-00105-MEMF-MAA, 2024 WL 4600432 (C.D. Ca. Sept. 10, 2024) ....................8, 9, 10

*Bush v. Cardtronics, Inc.*,
No. CV H-20-2642, 2020 WL 6261694 (S.D. Tex. Oct. 23, 2020) ....................11

*In re Clerici*,
481 F.3d 1324 (11th Cir. 2007) ....................9, 11

*Ecuadorian Plaintiffs v. Chevron Corp.*,
619 F.3d 373 (5th Cir. 2010) ....................9

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002) ....................6

*Eni Ghana Expl. & Prod. Ltd v. Gaffney Cline & Associates, Inc.*,
No. 4:22-MC-01285, 2022 WL 3156224 (S.D. Tex. Aug. 8, 2022) ....................9

*Euromepa, S.A. v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998) ....................7

*In re Gianasso*,
No. C 12-80029 ........ 8

*In re Golden Meditech Holdings Ltd.*,
No. 24 MISC. 24 (DEH), 2024 WL 5247285 (S.D.N.Y. Dec. 30, 2024) ........ 12

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
No. 19-MC-80215-WHO (TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ........ 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ........ *passim*

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018) ........ 6

*In re Labor Court of Brazil*,
466 F. Supp. 2d 1020 (N.D. Ill. 2006) ........ 11

*LEG Q LLC v. RSR Corp.*,
No. 3:17-CV-1559-N-BN, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017) ........ 8, 10

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,
539 F.2d 1216 (9th Cir. 1976) ........ 2, 6

*In re: Letters Rogatory v. Int'l Bank of Commerce*,
No. 7:14-MC-1044, 2015 WL 12839786 (S.D. Tex. July 30, 2015) ........ 7

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ........ 8

*In re Metallgesellschaft AG*,
121 F.3d 77 (2d Cir. 1997) ........ 7

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
No. 1:08-CV-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ........ 11

*In re Nike Shipholding Corp.*,
No. 1:23-MC-00221 (ALC) (KHP), 2023 WL 5917196 (S.D.N.Y. July 31, 2023) ........ 10

*In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*,
848 F.2d 1151 (11th Cir. 1988) ........ 6

*In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*,
748 F. Supp. 2d 522 (E.D. Va. 2010) ........ 9

*In re Safra*,
No. 21-MC-640 (GHW) (JLC), 2022 WL 3584541 (S.D.N.Y. Aug. 22, 2022)..............8, 9, 11

*Tex. Keystone Inc. v. Prime Nat. Res., Inc.*,
694 F.3d 548 (5th Cir. 2012) ..........6, 7

*In re Veiga*,
746 F. Supp.2d 8 (D.D.C. 2010) ..........11

*Venequip, S.A. v. Mustang Machinery Company, LLC*,
No. 4:21-MC-2391, 2022 WL 3951173 (S.D. Tex. Aug. 30, 2022)..........8, 10

*In re Watkins*,
No. CV 24-MC-0023 (JGK) (RFT), 2024 WL 4264900 (S.D.N.Y. July 26, 2024) ..........8

*Weber v. Finker*,
554 F.3d 1379 (11th Cir. 2009) ..........7, 11

**Statutes and Other Authorities**

28 U.S.C. § 1782(a) ..........2

FED. R. CIV. P. 26(b)(1) ..........11

# I. INTRODUCTION

Pursuant to 28 U.S.C. § 1782(a), PSA LLC ("**PSA**") applies to this Court *ex parte* for an order requiring Mr. Maksat Idenov, a resident of this District, to provide testimony and/or produce documents for use in a court proceeding ongoing in Switzerland (the "**Swiss proceeding**").

In the Swiss proceeding, PSA brings claims against Messrs. Hormoz Vasfi, Simon Gabathuler, Victor Vasfi, Best Oil SA, Dragon Production Sàrl, Skema S.p.A., Tozzi Sud S.p.A., Mr. Agostino Bianchi, and Mr. Mario Secondo Cerveglieri (the "**Defendants**") in connection with a cross-border illegal bribery and corruption scheme perpetrated by them against PSA, in relation to the Kashagan and Karachaganak oil and gas development projects.

Mr. Idenov was Vice-President and Managing Director at KazMunayGas ("KMG"), the state-owned oil and gas company of Kazakhstan which was involved in both projects, at the time when the Defendants engaged in their corruption and bribery scheme. PSA has learned from the Italian criminal proceeding files and materials that Mr. Idenov was one of the Kazakh officials that the Defendants in the Swiss proceeding illegally engaged with in relation to the projects. Mr. Idenov was intimately familiar with the Defendants' scheme and had personal relationships with some of the Defendants. Documentary evidence suggests that Mr. Idenov may have obtained benefits under the scheme. Mr. Idenov, therefore, has relevant, discoverable information that will assist the ongoing Swiss proceeding. Accordingly, PSA respectfully requests the Court's assistance pursuant to § 1782(a) to obtain discovery from Mr. Idenov, who is a resident of this District, concerning the corruption scheme at the heart of PSA's claim in the Swiss proceeding.

Under § 1782(a), "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." Applications under § 1782(a) for discovery are ordinarily addressed on an *ex parte* basis. *See, e.g.*, *Banco Mercantil de Norte, S.A. v. Paramo,*

114 F.4th 757, 758 (5th Cir. 2024) ("Section 1782 petitions are often initially considered *ex parte.*"); *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 474 (5th Cir. 2022) ("There is no reason to disapprove *ex parte* applications."); *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976).

PSA meets each of § 1782(a)'s requirements: Mr. Idenov "reside[s]" or can be "found in" this District; the discovery sought is for "use in" the ongoing Swiss proceeding; and PSA is an "interested party" in that proceeding. *See* 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256–59 (2004). The four discretionary factors a court considers in determining whether to grant a § 1782(a) request for discovery, *Intel*, 542 U.S. at 264-65, also all support an order requiring Mr. Idenov to provide information regarding the illegal bribery and corruption scheme perpetrated against PSA. The requested discovery is obtainable in this District, where Mr. Idenov resides, and cannot be obtained from within Switzerland without this Court's assistance. Swiss courts historically have been receptive to federal-court assistance under § 1782(a). PSA's discovery requests do not attempt to circumvent foreign proof-gathering restrictions as they are a good-faith effort to obtain relevant, probative evidence. Lastly, the discovery requested is not unduly burdensome but relates to central issues in the Swiss proceeding and would be permitted under the Federal Rules of Civil Procedure.

## II. BACKGROUND FACTS: PSA WAS THE VICTIM OF A COMPLEX, CROSS-BORDER ILLEGAL CORRUPTION AND BRIBERY SCHEME

### A. Background on the Kashagan and Karachaganak projects

The Republic of Kazakhstan is the largest country in Central Asia and has been blessed with large volumes of natural resources. *See* Declaration of Philippe Neyroud ("Neyroud Decl."), ¶ 4. In 1997, to help newly independent Kazakhstan develop the Kashagan oil field, the Republic entered into a Production Sharing Agreement with respect to North Caspian Sea between the

Republic and several contracting companies (the "**NCSPSA**"). *Id.* at ¶ 5. The Republic has also entered into a production sharing agreement with respect to the Karachaganak field (the "**FPSA**"). *Id.* at ¶ 6. PSA currently acts as a designated Authority under the NCSPSA and the FPSA, representing the Republic of Kazakhstan's interests. *Id.* at ¶ 8, Exhibit 1.

In relation to the performance of works under the NCSPSA and the FPSA, a number of individuals, together with the shell companies they controlled, orchestrated a corruption and bribery scheme against PSA. *See* Section II. A., *infra*. PSA only learned the details of this scheme, and the role various individuals and entities played in it, in the fall of 2023. As a result, PSA brought an action against the Defendants in relation to their participation in the said scheme before a Tribunal of first instance in Geneva, Switzerland. *See* Section II. B., *infra*. PSA hereby seeks discovery from Mr. Idenov under § 1782(a) as Mr. Idenov possesses information that is relevant to PSA's claims in that proceeding. *See* Section II. C., *infra*.

**B. The Defendants' corruption scheme**

Between 2006 and 2011, the Defendants in the Swiss proceeding engaged in a number of abusive, fraudulent, and/or corrupt practices inflicting harm upon PSA during the development of the Kashagan and Karachaganak fields by their respective operators. *See* Neyroud Decl. ¶¶ 9-10. The scheme followed an unmistakable pattern: numerous subcontractors were awarded contracts through intermediaries who secured these awards for a low initial budget, only for the contracts to be amended later, at that time without competitive tendering and significantly inflating the costs to the detriment of PSA. *Id.* at ¶ 10.

Messrs. Hormoz Vasfi, Simon Gabathuler, Victor Vasfi, and the shell companies they controlled, were acting as such middlemen to the benefit of their numerous "clients" involved in the works relating to the Kashagan and Karachaganak projects. *Id.* at ¶ 11. Through the fictitious service agreements, exorbitant sums of money generated as additional costs were then funneled

into their pockets, and into those of corrupt officials and company executives they colluded with. *Id.* at ¶ 10.

### C. The Swiss proceeding

On March 20, 2025, PSA filed a civil action against the Defendants before the Tribunal of first instance in Geneva, Switzerland. *See* Neyroud Decl. ¶ 12, Exhibit 3. In that action, PSA seeks to recover the amounts illicitly extracted from PSA as a result of the corrupt scheme orchestrated by the Defendants in relation to awarding and/or amending various contracts. *Id.* at ¶¶ 12-13. The evidence sought here is relevant and material to that proceeding and necessary for its resolution, as described below.

### D. The evidence sought from Mr. Maksat Idenov is relevant to and will be used in the ongoing Swiss proceeding

Mr. Idenov was formerly an official at KMG, the state-owned oil and gas company of Kazakhstan which was involved in the Kashagan and Karachaganak projects. *See* Neyroud Decl. ¶ 14. He held positions of Vice-President and Managing Director of KMG at the time when the Defendants engaged in their corruption and bribery scheme. *Id.*

PSA has learned from Italian criminal proceeding files and materials[1] that Mr. Idenov was one of the Kazakh officials that the Defendants in the Swiss proceeding illegally engaged with in relation to the projects. *Id.* at ¶ 15, Exhibits 6, 8. In particular, Mr. Agostino Bianchi pleaded guilty to international corruption that involved illicit payments to, *inter alia*, Mr. Idenov in relation to award and subsequent amendments of the JV Smeka-Tozzi contracts. *Id.* Documentary evidence currently available to PSA also suggests that Mr. Idenov and Mr. Vasfi maintained a

[1] Italian public prosecutors pursued extensive criminal investigations and proceedings against some of the Defendants following allegations of corruption, bribery, and financial crimes relating to the contracting companies involved in the Kashagan and Karachaganak projects.

long-standing close relationship, and that Mr. Idenov obtained tangible benefits directly from Mr. Hormoz Vasfi. *Id.* at ¶¶ 16-17, Exhibits 8, 9.

After leaving KMG, Mr. Idenov joined Eni and is currently its head of Strategy and Business Development at Eni US. Eni is one of the FPSA contracting companies and is the parent company of one of the NCSPSA contracting companies that was also implicated in the Defendants' bribery and corruption scheme. *Id.* at ¶¶ 14, 18.

By way of (*i*) his employment with KMG and Eni and (*ii*) his direct interactions with the Defendants in relation to the Kashagan and Karachaganak projects, Mr. Idenov gained and is in possession of information relevant to the ongoing Swiss proceeding. This information will aid PSA in ascertaining the full scope of the Defendants' wrongdoings, other actors involved in the scheme, other possible contracts and transactions affected, and the extent of harm suffered by PSA.

## III. SECTION 1782(a) ENTITLES PSA TO TAKE DISCOVERY FROM MR. MAKSAT IDENOV

Section 1782(a) provides this Court with ample discretion to allow taking of discovery in line with the Federal Rules of Civil Procedure to assist a foreign tribunal in its proceedings. Section 1782(a) in part provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Section 1782(a) was amended to its current version in 1964 "to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191–92 (3d Cir. 1998). According to the Senate Report that accompanied the bill including § 1782(a): "Congress hoped to encourage foreign countries to revise their judicial procedures

similarly." *In re Application of Asta Medica, S.A.*, 981 F.2d 1, 5 (1st Cir. 1992) (citing S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788).

Federal courts consistently emphasize that § 1782(a) "reflects a congressional desire to increase the power of district courts to respond to requests for international assistance." *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1154 (11th Cir. 1988) (citing *In re Letters Rogatory,* 539 F.2d at 1218). As explained by the Second Circuit, the "twin aims of Section 1782" are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (internal quotations omitted); *see also Tex. Keystone Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553-54 (5th Cir. 2012). In its opinion in *Intel*, 542 U.S. at 247, the Supreme Court underscored that "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *See also In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) ("Congress has expressed as its aim that the statute be interpreted broadly"); *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) ("[T]he history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance.") (internal citations and quotations omitted).

Three statutory requirements must be met for a grant of assistance under § 1782(a): (*i*) the person from whom discovery is sought resides or is found in the district; (*ii*) the discovery is for use in a proceeding before a foreign tribunal; and (*iii*) the application is made by a foreign or international tribunal or "any interested person." *Tex. Keystone Inc.*, 694 F.3d at 553.

"[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." *In re Metallgesellschaft AG*, 121 F.3d 77, 78 (2d Cir. 1997); *see also Tex. Keystone Inc.,* 694 F.3d at 553. In exercising that discretion, a district court considers four factors: (*i*) whether the subject of the request is a participant in the foreign proceeding, and, thus, the documents or testimony sought are within the foreign tribunal's jurisdictional reach and accessible absent § 1782(a) aid; (*ii*) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (*iii*) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the U.S.; and (*iv*) whether the subpoena contains unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264–65. "Once discovery is authorized under § 1782, the federal rules, Fed. R. Civ. P. 26–36, contain the relevant practices and procedures for the taking of testimony and the production of documents." *Tex. Keystone Inc.*, 694 F.3d at 554, n. 3 (quoting *Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir. 2009)).

**A. PSA meets the statutory requirements of § 1782(a)**

PSA satisfies the minimal showing necessary to authorize § 1782(a) discovery. First, available information confirms that Mr. Idenov "resides or is found" in this District. *See* Neyroud Decl. ¶ 21 ("Mr. Maksat Idenov resides in Houston, Texas."); Exhibit 11.

Second, the discovery PSA seeks is for "use in a foreign proceeding," consisting of the ongoing Swiss proceeding described in Section II. B., *supra*. In analyzing the "for use" requirement, courts focus on two questions: "(1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998); *In re: Letters Rogatory v. Int'l Bank of Commerce*, No. 7:14-MC-1044, 2015 WL 12839786, at *3 (S.D. Tex. July 30, 2015). No other limitations to the "for use"

provision exist. *See Mees v. Buiter*, 793 F.3d 291, 298-99 (2d Cir. 2015); *LEG Q LLC v. RSR Corp.*, No. 3:17-CV-1559-N-BN, 2017 WL 3780213, at *8 (N.D. Tex. Aug. 31, 2017). Courts have consistently found Swiss court proceedings sufficient for the purposes of § 1782(a) assistance. *See In re Watkins*, No. CV 24-MC-0023 (JGK) (RFT), 2024 WL 4264900, at *5 (S.D.N.Y. July 26, 2024) (finding that Swiss actions are "appropriate predicates for a grant of discovery under Section 1782"); *In re Safra*, No. 21-MC-640 (GHW) (JLC), 2022 WL 3584541, at *3 (S.D.N.Y. Aug. 22, 2022); *Venequip, S.A. v. Mustang Machinery Company, LLC*, No. 4:21-MC-2391, 2022 WL 3951173, at *2 (S.D. Tex. Aug. 30, 2022); *In re Bindhoff*, No. 2:24-MC-00105-MEMF-MAA, 2024 WL 4600432, at *4 (C.D. Ca. Sept. 10, 2024) (holding that contemplated Swiss proceedings satisfy § 1782's statutory requirements where the applicant had retained Swiss counsel and undertaken an extensive investigation into the claims); *In re Gianasso*, No. C 12-80029 MISC SI, 2012 WL 651647, at *2 (N.D. Ca. Feb. 28, 2012).

Third, PSA is undoubtedly an "interested person" as it is the plaintiff in the ongoing Swiss proceeding. *See Intel*, 542 U.S. at 256 (a litigant in a foreign proceeding "may be the most common example of, the 'interest person[s]' who may invoke § 1782").

### B. The Court should exercise its discretion to grant the Application

Where, as here, the information sought is relevant, it is "presumptively discoverable" under § 1782(a). *In re Bayer AG*, 146 F.3d at 196 ("relevant evidence is presumptively discoverable under § 1782"). Beyond relevance, all four discretionary factors in this case weigh in favor of granting PSA's Application.

#### 1. The information sought is located in this District and inaccessible absent § 1782(a) assistance

Mr. Idenov resides in this District. In that vein, information concerning Mr. Idenov's knowledge of the bribery and corruption scheme, its scope, and its participants is located in this

District. That information is within this Court's jurisdiction and cannot be obtained from within Switzerland. *See* Neyroud Decl. ¶¶ 22-25. Without §1782(a) assistance, PSA will have no access to the information that resides in this District that is relevant and material to the ongoing Swiss proceeding.

Mr. Idenov and PSA are not adversaries in any proceedings, Mr. Idenov is not a defendant in the Swiss proceeding, and, in any event, the information sought here is located in this District and cannot be obtained from Switzerland. *See, e.g., In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 526 (E.D. Va. 2010) ("although this factor was originally expressed as a 'participant' versus 'nonparticipant' analysis under the facts presented in *Intel*, the true question at hand is whether the requested discovery is available to the foreign tribunal without the assistance of this Court."); *In re Clerici*, 481 F.3d 1324, 1334-35 (11th Cir. 2007) (allowed § 1782(a) assistance over Clerici, a resident of the U.S. who was also a party to Panamanian proceedings, because Panama court was unable to enforce its own document production order on him). For this reason alone, this discretionary factor weighs in favor of granting PSA's application.

**2. The nature of the Swiss proceeding supports § 1782(a) assistance**

The nature of the Swiss proceeding amply supports the discovery sought. Under the second *Intel* factor, courts consider whether the foreign tribunal is willing to accept the information sought in a § 1782(a) request. *In re Safra*, 2022 WL 3584541, at *5; *In re Bindhoff*, 2024 WL 4600432, at *6. Unless there is authoritative proof that the foreign tribunal would reject the information, this factor weights in favor of granting the request. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010). This proof must come from a government agent in the country's judicial, executive, or legislative branch who makes declarations specifically addressing the use of evidence gathered by way of the § 1782(a) request. *In re Safra*, 2022 WL 3584541, at *5; *Eni*

*Ghana Expl. & Prod. Ltd v. Gaffney Cline & Associates, Inc.*, No. 4:22-MC-01285, 2022 WL 3156224, at *4 (S.D. Tex. Aug. 8, 2022); *LEG Q LLC v. RSR*, 2017 WL 3780213, at *9; *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO (TSH), 2020 WL 820327, at *5 (N.D. Cal. Feb. 19, 2020) (granting application because "the Court is not aware of any clear directive from [Switzerland] against the use of § 1782 evidence.").

PSA will use the requested evidence in the Swiss proceeding in support of its claim for reimbursement of illicitly extracted amounts against the Defendants arising out of their complex, cross-border illegal bribery and corruption scheme. PSA is unaware of any restriction under Swiss law that would discourage litigants from seeking such discovery in the United States. On the contrary, U.S. courts historically have granted assistance under § 1782(a) in aid of Swiss proceedings, with some noting that "a plaintiff in a civil proceeding [in Switzerland] is entitled to introduce evidence obtained from any source, including U.S. discovery." *In re Bindhoff*, 2024 WL 4600432, at *7; *In re Nike Shipholding Corp.*, No. 1:23-MC-00221 (ALC) (KHP), 2023 WL 5917196, at *2 (S.D.N.Y. July 31, 2023); *see also Venequip, S.A.*, 2022 WL 3951173, at *2 (finding this factor "neutral" in a Section 1782 application for use in Swiss proceedings).[2] PSA's Swiss counsel has confirmed the same. *See* Neyroud Decl. ¶ 25.

**3. The Application does not seek to circumvent foreign proof-gathering restrictions**

Section 1782(a) does not require that the information sought be discoverable or admissible under the procedures of the foreign tribunal. *See Intel*, 542 U.S. at 261; *Venequip, S.A.*, 2022 WL 3951173, at *2; *In re Application of HydroDive Nigeria, Ltd.*, No. 13-MC-0477, 2013 WL

[2] In any event, *Intel* states that a § 1782(a) application may properly be granted even in the face of the expressed opposition of the very foreign tribunal hearing the matter. *See* 542 U.S. at 265 (finding that § 1782(a) discovery could be proper although the European Commission "stated in amicus curiae briefs to this Court that it does not need or want the District Court's assistance.").

12155021, at *3 (S.D. Tex. May 29, 2013); *Weber*, 554 F.3d at 1384–85. Rather, in determining whether an application amounts to an effort to circumvent foreign proof-gathering restrictions, the issue for a district court is whether the discovery is being sought in bad faith. *Bush v. Cardtronics, Inc.*, No. CV H-20-2642, 2020 WL 6261694, at *5 (S.D. Tex. Oct. 23, 2020) ("Even if [the petitioner] is seeking discovery that may not be available to him in a [foreign] proceeding, that is not enough."); *Minatec Fin. S.A.R.L. v. SI Group Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) ("The primary issue for us is whether [the applicant] is pursuing this discovery in bad faith.").

PSA's request for discovery from Mr. Idenov is a good-faith effort to obtain relevant, material information for use in the Swiss proceeding. PSA is unaware of any restriction in Switzerland that would prohibit the discovery it seeks. Any information obtained through discovery would thus be usable in the Swiss proceeding. *See In re Safra*, 2022 WL 3584541, at *6 ("[N]othing in the record exists to establish that Swiss law or policy prohibits this type of discovery"; "it is not the place of this Court to analyze Swiss law to consider the potential admissibility of the discovery in the absence of some authoritative proof that it will not be allowed.").

**4. The information sought is within the scope of permissible discovery**

The Application is not unduly intrusive or burdensome. In this respect, courts are directed to look at the requests in the aggregate under the prism of Federal Rule of Civil Procedure 26. *See In re Clerici*, 481 F.3d at 1336; *In re B&C Holding GmbH*, No. CV 23-365-JWD-EWD, 2023 WL 8171733, at *8 (M.D. La. Nov. 24, 2023); *In re Veiga*, 746 F. Supp.2d 8, 26 (D.D.C. 2010); *In re Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1033 (N.D. Ill. 2006). Under Federal Rule of Civil Procedure 26, the information requested must be "relevant" and "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In examining relevance for a § 1782(a) request, courts in this

district "should be permissive since the substantive issues are to be decided by a foreign court applying unfamiliar law." *In re Golden Meditech Holdings Ltd.*, No. 24 MISC. 24 (DEH), 2024 WL 5247285, at *6 (S.D.N.Y. Dec. 30, 2024) (granting application after finding "Applicant has identified at least one factual basis for seeking records from these entities and is not 'notably silent.'").

Here, the information requested by PSA is relevant and material to the Swiss proceeding, is not protected from disclosure by any known privilege or doctrine and is otherwise readily obtainable. The documents and testimony requested are proportional to the needs of the Swiss proceeding because it concerns a multi-year and multi-jurisdictional complex fraud scheme orchestrated by the Defendants. *See* Neyroud Decl. ¶¶ 9-11.

## IV. CONCLUSION

The Application satisfies the statutory requirements and meets the discretionary factors to obtain assistance under § 1782(a). Therefore, for the reasons above, PSA respectfully requests that the Court grant its Application and enter the accompanying Order allowing it leave to take discovery from Mr. Maksat Idenov.

DATED and FILED on March 25, 2025.

Respectfully submitted,

*<u>/s/ Amanda D. Price</u>*

Amanda D. Price, Attorney-In-Charge
Texas State Bar No. 24060935
S.D. No. 1155447
SQUIRE PATTON BOGGS (US) LLP
600 Travis Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 546-5850
Facsimile: (713) 546-5830
Email: Amanda.Price@squirepb.com

Counsel for Applicant
*PSA LLC*