# EXHIBIT 2

ALLEGATO Nr. 72

I

# CONSULTANT AGREEMENT

This Agreement has been entered on May 2nd, 2007

**BY AND BETWEEN**

**JV SKEMA-TOZZI CORPORATE**, a corporation existing under the laws of Italy under registration No. 1736982, fiscal code and VAT Registration No. 04285470961, whose registered office is at via Matera. No. 14 – 20031 Cesano Maderno – Milano – Italy, (hereinafter referred to as "*Company*")

*- on the one side -*

**AND**

**TOP OIL UK**, a corporation existing under the laws of United Kingdom under registration No. 3920236, VAT No.680 13897 20895 whose registered office is at 120 East Road – London N1 6AA, United Kingdom (hereinafter referred to as "*Consultant*")

*- on the other side -*

(hereinafter jointly referred to as "*the Parties*" or, severally, "*the Party*").

**WHEREAS**

A. the Company is specialized in producing, even on request, low and medium voltage switchboards, local equipment rooms for those switchboards (hereinafter referred to as "LER"), and related supervisions and control systems, with particular reference to oil and gas industry (hereinafter referred to as "*Products and Services*");

B. the Consultant is specialized in international consulting in oil and gas sector;

C. the Company is interested in availing itself of the proficiency of Top Oil UK relating to its activity in Kazakhstan (hereinafter referred to as "*Territory*"), regarding the supply of its Products and Services for the oil and gas industry (hereinafter referred to as "*Project/s*");

D. the present agreement (hereinafter referred to as the "*Agreement*") confirms the understanding of the mutual present intentions of the Company and the Consultant with respect to the principal terms and conditions under which that Consultant will perform his activities in favour of the Company.

Now, therefore, the Parties hereto, in consideration of the premises and covenants contained herein, agree as follows:

**Article I – General purpose of Agreement**

1.1. The purpose of this Agreement is to authorise and nominate the Consultant as the Company's Consultant, which agrees, upon and subject to terms and conditions of the Agreement, to provide the promotion and marketing of the Company's activities set forth herein for the Project/s in the Territory as specified in the present Agreement in the Agreed Specific Scheme as per Attachment A (hereinafter referred to as "*Project/s*").

1.2. Only the legal representatives of the Parties having the necessary powers to sign, as specified below, may modify the content of the Agreement by mutual written agreement.

1.3. For the purpose of the Agreement, only the Managing Director, the General Manager and a special attorney granted a specific power of attorney issued before a notary public shall be considered legal representatives of JV Skema-Tozzi; only the legal representatives according to the applicable law of incorporation and a special attorney granted a specific power of attorney issued before a notary public shall be considered legal representatives of Top Oil UK.

1.4. The following definitions when capitalised shall apply to this Agreement:

- "*Client*" - shall mean the company or any other entity (either private or public) which issued a Tender for the Project/s listed in the Agreed Specific Scheme as

SEGUE ALLEGATO Nr. 72

per Attachment A.

- "*Contract/s*" or/and "*Tender/s*" - shall mean the Contract entered into between the Company and the Client for the Project/s specified under Attachment A, in the case the Tender related to the Project has been assigned before the expiration date of this Agreement.

**1.5.** The Consultant's services under this Agreement are strictly limited to the above Tender/s and/or Contract/s and Client. Therefore, any other project, contract or supply of any form shall be handled by the Company directly without intervention of the Consultant, in particular:

- projects, contract, supply of any form, or business with any other customer in the Territory other than the Client;
- any project with the Client other than the Project/s in Attachment A;
- any other contract, supply of any form, or business related to products or services not included in the Agreement.

Thereof, any project or supply other than the Tender related to Project/s in Attachment A for the Client are excluded from this Agreement and no commission or fee shall be due to the Consultant for any sale or supply in connection thereto, regardless if the final destination of the products is in the Territory.

**1.6.** The Parties acknowledge and agree that under the present Agreement the Consultant is an independent contractor who is neither an employee nor an agent of the Company.

**1.7.** The Consultant shall have neither authority nor power to make/sign contracts on behalf of the Company, and, anyway, the Consultant does not have, nor will be hold himself out as having, any power or authority to assume, create or incur any expense, liability or obligation, expressed or implied, in the name and/or on behalf of the Company, or to act in the name and/or on behalf of the Company in any capacity or in any manner, nor shall be entitled or allowed to bind the Company towards third parties. The Consultant shall not be considered representative of the Company and therefore the former shall not have any of the related powers.

**Article 2. – Products and Services covered by the Agreement**

2.1 The Products and Services of the Company are offered to the Client in accordance with the Tender requirements related to the Project/s.

2.2 The Company is entitled to change the content of the offer for the Tender to the Client, and such alteration shall take effects when notified to the Consultant.

**Article 3. – Consultant's duties and functions**

3.1 The Consultant agrees to promote, in the best way possible and in accordance with the Company's instructions, the sale of the Products and Services for the Project/s and to protect the Company's interests, all this with the diligence and reasonable care of a responsible businessman and to provide the activities in anyway related to the Project/s.

3.2 The Consultant shall assist the Company in the whole commercial aspects from obtaining specifications from the Client up to the final settlement of invoices corresponding to products sold for the above mentioned Contract.

3.3 The Consultant is not authorized to negotiate with the Client any matter in connection with the Project and the related supply of the Products unless authorized in writing by the Company.

3.4 The Consultant shall not make use of Company's trademarks, trade names or any other symbols. On the expiration of this Agreement the Consultant shall return to the Company the advertising material and any other documents which have been made available to the Consultant by the Company and are in the Consultant's possession.

SEGUE ALLEGATO Nr. 72

3.5 All above mentioned duties shall be provided mainly in Kazakhstan.

**Article 4. – Company's duties and functions**

4.1 The Company will provide the Consultant with commercial and technical assistance at the Consultant's reasonable request as considered appropriate by the Company and with the useful advertising material (leaflets, price-lists) concerning the Products and the Services for the opportune distribution to Client/s. Such material shall remain the property of the Company.

4.2 The Company shall inform the Consultant within a reasonable time about the decision to accept or refuse any order received from the Client

4.3 The Company shall pay the Fee to the Consultant in accordance with Article 7. hereof.

**Article 5. – Undertaking not to compete and confidentiality**

5.1 The Consultant shall not, without the Company's prior written authorisation, promote, represent, manufacture or market, for the whole term of this Agreement, any products and services which are in competition with the Products and Services of the Company specified in the offer for the Tender. In particular the Consultant undertakes not to act as Consultant, as commission merchant, reseller, distributor or in any other way, - within the Territory or elsewhere for the Territory -, directly or indirectly, for the benefit of third parties who manufacture, supply or market products and/or services which are in competition with the Products and/or Services covered by this Agreement or anyway in competition with the ones of the Company.

5.2 However, the Consultant may represent, market or manufacture non-competitive products and/or services (provided not for the benefit of competing Company) on condition that the exercise of such activity does not jeopardize or damage the punctual fulfilment of the Consultant's obligations under this Agreement.

5.3 The Consultant shall not reveal, either during the validity of the Agreement or after its termination, the Company's trade or commercial secrets or confidential information that have come to the Consultant's knowledge through his activities as Consultant for the Company, and agrees not to use such secrets or confidential information for purposes other than those of the present Agreement, unless or until (i) the prior approval of the disclosing Party; or (ii) the recipient is compelled to disclose such information by any governmental authority or pursuant to applicable law; or (iii) the recipient can reasonably demonstrate that the information is available in the public domain. Confidential information shall include the terms and conditions of this Agreement as well as the information on data, materials, products, technology, computer programs, specifications, designs, manuals, business plans, marketing plans, accounting and financial information, and other information disclosed or submitted, orally, in writing, or by any other media, to the Consultant by the Company (hereafter referred to as the "***Confidential Information***").

5.4 On termination of this Agreement for any reason the Consultant shall not retain any Confidential Information and shall upon request of the Company either return to the Company or destroy all Confidential Information which is in a tangible form and is in the possession of the Consultant pursuant to this Agreement, together with all copies thereof.

5.5 Notwithstanding the expiry of this Agreement and/or its termination for any cause, the obligations regarding confidentiality on Confidential Information shall last and shall expire after 12 months after any expiry or termination of the present Agreement.

**Article 6. – Sub-consultants**

6.1 The Consultant may engage sub-consultants in order to be assisted in all or part of the

SEGUE ALLEGATO Nr. 72

Territory.

6.2 The Consultant shall be solely and entirely responsible for the activities of its sub-Consultants and shall be solely and entirely liable for the commission or any other kind of remuneration the sub-consultants might be entitled to.

**Article 7. – Fees**

7.1 The Consultant shall be entitled to a fee of 4% on the totality of invoices to the Client from the Company for the Project/s listed in the Agreed Specific Scheme, unless otherwise agreed, as specified in the Attachment A (hereinafter referred as to the "***Fees***"). The Fees shall be due only for the Tenders assigned before the expiration date of this Agreement, and also on payments made by the Client after this expiration date, provided that those payments are referred to the above mentioned Tenders.

7.2 With reference to Contract n. 2004/1089 - Local Equipment Rooms Amendment n. 2 (hereinafter referred to as the "***Amendment n. 2***") the Fee is agreed upon a lump sum of 1.213.000,00 USD, and shall be paid as per the schedule set forth in Attachment A.

7.3 Payment of Fees shall be on a pro-rata basis, against payments received by the Company from the Client, upon receipt of the relevant invoice from the Consultant, as better specified under Article 8. regarding payment details.

7.4 The Consultant shall be entitled to the Fees exclusively when the Tenders amounts are effectively paid to the Company.

7.5 Any tax payable by the Consultant on Consultant's Fees shall be on the Consultant's account.

7.6 The Fees shall include the right of compensation for any cost and/or expenses incurred by the Consultants for the execution of the Agreement, and, anyway, the Fees shall be inclusive of any right the Consultant can pretend in relation to the Agreement.

7.7 Notwithstanding the above, the Company shall compensate the Consultant for expenses incurred by the Consultant on the Company's behalf and fulfilling the Company's requirements. provided that the Company has agreed in writing in advance to the related amounts of costs. The expenses under this article shall be payable within 30 (thirty) working days from receipt of relevant Consultant's invoice.

**Article 8. – Payment of Fees**

8.1 The Fees due to the Consultant under Article 7. shall be denominated and remitted in the same currency as the corresponding payment received by the Company. Payments shall be made to a bank account of the Consultant, to be designed by the Consultant.

8.2 The payment of the Fees shall be made at the same moment in which the Company receives the payments from its Client.

**Article 9. – Abortive Business – Reduction of Project**

9.1 No Fees shall be due in respect of orders not accepted by the Company and, under this respect, the Company shall retain its full and unconditioned right not to accept an order, without any need of explanation to the Consultant and any liability towards him for Fees or other compensation related to unaccepted orders.

9.2 If a contract made by the Company with the Client is not thereafter carried into effect, totally or partially, the Consultant shall not be entitled to the Fees in respect to the portion of the contract that has not been fulfilled for any cause.

**Article 10. – Policy of fairness**

10.1 The Consultant represents and warrants that neither him nor any of his relatives, associates, affiliates, or other person or entity acting on the instruction or the interest of the Consultant, has made or offered and will not make or offer with respect to the activities which are the subject of the Agreement, any payment, gift, promise or other advantage, whether directly or through intermediaries, to or for the use of any public official (i.e., any person holding legislative, administrative or judicial office, including

SEGUE ALLEGATO Nr. 72

any person exercising a public function for a public agency, a public enterprise or a public international organisation), where such payment, gift, promise or advantage would violate the applicable laws of the countries where the activity of the Consultant is to be carried out under this Agreement, or the Laws of the country of incorporation of the principal, or in general, the principles described in the Convention for Combating Bribery of Foreign Public Officials in International Business Transactions, signed in Paris on December 17th, 1997. The Consultant acknowledges the paramount importance of the aforesaid representation and warranty which is an essential feature of this Agreement, which will lead to immediate termination in the event of breach.

**Article 11. – Duration**

11.1 This Agreement is valid and effective from the signature date till the duration of contract mentioned in Attachment A and its extension.

11.2 Neither Party shall be entitled to any indemnity or compensation for non-renewal or termination of the present Agreement.

**Article 12. – Arbitration**

12.1 In any dispute arising out of or in connection with the present Agreement, its execution and related payment, the Parties will meet and try to settle the matter amicably, also through an attempt to conciliate.

12.2 If the Parties are unable to settle their dispute amicably, then the matter shall be settled in accordance with the rules of Conciliation and Arbitration of the International Chamber of Commerce by arbitration by single arbitrator to be appointed by the Chairman of the London Chamber of Commerce. All arbitration proceedings shall be held in London, in accordance with the Rules of Arbitration of the International Chamber of Commerce.

12.3 The Arbitration shall be carried out in English language.

**Article 13. – Applicable law and language**

13.1 This Agreement shall be governed by and construed in accordance with British Law and Statutory Instruments.

13.2 The governing language of the present Agreement and of any relations between the Parties (correspondence, notices, information etc.) shall be in English.

**Article 14. – Miscellaneous**

14.1 This Agreement is strictly confidential for both Parties, and its contents shall not be divulgated to third parties by either the Company or the Consultant.

14.2. The present Agreement shall constitute the entire Agreement between the Parties hereto and shall supersede and invalidate any prior Agreement or understanding between the Parties and any amendments hereto, whether written or oral.

14.3. No addition or modification or waiver to this Agreement shall be valid unless made in writing by duly authorized representatives of both Parties.

14.4. The rights and obligations arising from this Agreement may not be transferred in whole or in part by either of the Parties without the prior written consent of the other Party.

14.5. The non validity of any provision of this Agreement shall not affect the validity of any other provision. The invalid clause will be substituted with another mutual written agreement of the Parties.

14.6. The Consultant has no lien to the property of the Company.

**Article 15. – Execution of the Agreement**

15.1 The present Agreement has been signed and executed in two originals only with 15 (fifteen) Articles, this clause included.

15.2 The Company and Consultant have each in their possession one original, and no other copy is valid.

SEGUE ALLEGATO Nr. 72

15.3 Any notice to be made under this Agreement shall be in writing and shall be valid and sufficient if sent by telefax, courier, or registered mail return receipt requested, addressed as follows:
JV SKEMA-TOZZI CORPORATE,
via Matera, n. 14
20031 Cesano Maderno – Milano – Italy
Attention to Mr. Mario Cerveglieri or to Agostino Bianchi;
TOP OIL UK
120 East Road
London N1 6AA
United Kingdom
Attention to Mr. Simon Gabathuler (Managing Director)

IN WITNESS WHEREOF, the Parties hereto have executed or caused this Agreement to be executed by their respective officers or representatives thereto duly authorised, all in the place and as of the date set forth below.
May 2nd, 2007

| JV SKEMA-TOZZI CORPORATE | TOP OIL UK |
|---|---|
| Mr. Mario Cerveglieri | Mr. Simon Gabathuler |
| Mr. Agostino Bianchi | |

The Parties declare to approve expressly and specifically the following Articles of this Agreement: 5) Undertaking not to compete and Confidentiality; 7 Fees; 8) Payment of Fees; 9) Abortive Business – Reduction and increase of Project; 11) Duration; 12-13) Arbitration - Applicable Law and language; 14) Miscellaneous.
May 2nd, 2007

| JV SKEMA-TOZZI CORPORATE | TOP OIL UK |
|---|---|
| Mr. Mario Cerveglieri | Mr. Simon Gabathuler |
| Mr. Agostino Bianchi | |

SEGUE ALLEGATO Nr. 72

ATTACHMENT A

PROJECT/S AGREED SPECIFIC SCHEME

| N.O | DESCRIPTION/ENQUIRY | REF N.O | CLIENT | FEES LUMP SUM |
|---|---|---|---|---|
| 1 | ITT 2004/1089<br>PROVISION OF LOCAL EQUIPMENT ROOMS<br>STARTING FROM AMENDMENT N. 2 | | AGIP KCO | 1.213.000 $ |

**AGREED INVOICES SCHEDULING FOR AMENDMENT N. 2**

| Position | Date | Invoice amount |
|---|---|---|
| 1. | October 2007 | 250.000,00 $ |
| 2. | March 2008 | 275.000,00 $ |
| 3. | June 2008 | 400.000,00 $ |
| 4. | October 2008 | 288.000,00 $ |
| | **TOTAL:** | **1.213.000,00 $** |

| N.O | DESCRIPTION/ENQUIRY | REF N.O | CLIENT | FEES PERCENT |
|---|---|---|---|---|
| 1 | ITT 2004/1089<br>PROVISION OF LOCAL EQUIPMENT ROOMS<br>STARTING FROM AMENDMENT N. 3<br>AND FOLLOWING ONES | | AGIP KCO | 4% |

JV Skema-Tozzi

Messrs
**Top Oil UK**
**120 East Road**
**London N1 6AA**
**United Kingdom**

Care of Mr. Simon Gabathuler

**JV SKEMA-TOZZI**
**JOINT VENTURE CORPORATE**
**MV & LV SWITCHGEARS**
I-20031 CESANO MADERNO (MI)
14 VIA MATERA
TEL +39. 0362 528 395
FAX +39. 0362 659 807
E-MAIL jvskematozzi@skemaq.it

REG. IMPRESE MI 04 285 470 961
C.F. / P. IVA 04 285 470 961

Cesano Maderno, 25th April 2008

**Re: Consultant Agreement dated 18th April, 2008**

Dear Sirs,

- whereas on the date hereof JV Skema-Tozzi and Agip Kazakhstan North Caspian Operating Company NV (**"AGIP KCO"**) entered into the LOI (as defined in the consultant agreement entered into between JV Skema-Tozzi and Top Oil Uk on 18th April, 2008 - the "**2008 Consultant Agreeent**"), whose provisions you are fully aware of;
- you are also aware that some negotiations are still pending between the Company and AGIC KCO with regard to the Preliminary Activities (as defined in the LOI) whose remuneration is set forth under Paragraphs 11.b, 11.c and 11.d of the LOI,

following our verbal mutual understanding, with the present we inform you that with respect to the amounts provided under paragraph 11.a) of the LOI, your Fees (as defined under Paragraph 7.1 of the 2008 Consultant Agreement) shall be paid by JV Skema-Tozzi to Top Oil UK in compliance with what set forth by Articles 7 and 8 of the 2008 Consultant Agreement, whilst with respect to i) the Lump Sum provided under paragraph 11.b) and ii) the amounts provided under Paragraphs 11.c) and 11.d of the LOI, you will be entitled to the Fees only if and when the Company, on its turn, will be definitively entitled to receive the relevant payments: in such case we will discuss in good faith with you upon the amount of Fees to be paid to Top Oil UK with respect to the items hereinabove under i) and ii), based also on the net profit deriving to the Company thereto.

No other Fees, except those set forth hereinabove (and subject to the above conditions), shall be due to the Consultant under the 2008 Consultant Agreement with respect to the LOI.

Should you agree with what set forth hereinabove, please countersign this letter and return a copy to us.

Best regards,

**Mario Cerveglieri**
President

Tel: +39 0362 528 395
Fax: +39 0362 659 807
E-Mail: jvskematozzi@skemaq.it

CM.fl
File: T:\lettere\protocolli 2008\08-170Ijv.doc



IQNet

# CONSULTANT AGREEMENT

This Agreement has been entered on 18th April, 2008

**BY AND BETWEEN**

**JV SKEMA-TOZZI**, a corporation existing under the laws of Italy under registration No. 1736982, fiscal code and VAT Registration No. 04285470961, whose registered office is at via Matera. No. 14 – 20031 Cesano Maderno – Milano – Italy, (hereinafter referred to as "***Company***")

*- on the one side -*

**AND**

**TOP OIL UK**, a corporation existing under the laws of United Kingdom under registration No. 3920236, VAT No.680 13897 20895 whose registered office is at 120 East Road – London N1 6AA, United Kingdom (hereinafter referred to as "***Consultant***")

*- on the other side -*

(hereinafter jointly referred to as "***the Parties***" or, severally, "***the Party***").

**WHEREAS**

A. the Company is specialized in producing, even on request, low and medium voltage switchboards, local equipment rooms for those switchboards (hereinafter referred to as "**LER**"), and related supervisions and control systems, with particular reference to oil and gas industry (hereinafter referred to as "***Products and Services***");

B. the Consultant is specialized in international consulting in oil and gas sector;

C. the Company is interested in availing itself of the proficiency of Top Oil UK relating to its activity in Kazakhstan (hereinafter referred to as "***Territory***"), regarding the supply of its Products and Services to the Client (as defined hereinafter) for the construction of Engineering Production and Construction Buildings (hereinafter referred to as the ***Project***);

D. the present agreement (hereinafter referred to as the "***Agreement***") confirms the understanding of the mutual present intentions of the Company and the Consultant with respect to the principal terms and conditions under which that Consultant will perform his activities in favour of the Company.

Now, therefore, the Parties hereto, in consideration of the premises and covenants contained herein, agree as follows:

## Article 1 – General purpose of Agreement

**1.1.** The purpose of this Agreement is to authorise and nominate the Consultant as the Company's Consultant, which agrees, upon and subject to terms and conditions of the Agreement, to provide the promotion and marketing of the Company's Products and Services in the Territory with regard to the possible execution between the Company and the Client of a LOI (as defined hereinafter).

File : T:\lettere\protocolli 2008\consultant agreement 2008 - jv sk tz-top oil etc\consultant agreement 2008 - 18.04.08.doc

1.2. Only the legal representatives of the Parties having the necessary powers to sign, as specified below, may modify the content of the Agreement by mutual written agreement.

1.3. For the purpose of the Agreement, only the Managing Director, the General Manager and a special attorney granted a specific power of attorney issued before a notary public shall be considered legal representatives of JV Skema-Tozzi; only the legal representatives according to the applicable law of incorporation and a special attorney granted a specific power of attorney issued before a notary public shall be considered legal representatives of Top Oil UK.

1.4. The following definitions when capitalised shall apply to this Agreement:
- "***Client***" - shall mean Agip Kazakhstan North Caspian Operating Company NV.
- "***LOI***" - shall mean the letter of intent to be entered into between the Company and the Client for the carrying out by the Company of some activities preliminary to the Project.

1.5. The Consultant's services under this Agreement are strictly limited to the above LOI and Client. Therefore, any other project, contract or supply of any form shall be handled by the Company directly without intervention of the Consultant, in particular:
- projects, contract, supply of any form, or business with any other customer in the Territory other than the Client;
- any project with the Client other than the Project/s;
- any other contract, supply of any form, or business related to products or services not included in the Agreement.

Thereof, any project or supply other than those set forth under the LOI are excluded from this Agreement and no commission or fee shall be due to the Consultant for any sale or supply in connection thereto, regardless if the final destination of the Products and Services is in the Territory.

1.6. The Parties acknowledge and agree that under the present Agreement the Consultant is an independent contractor who is neither an employee nor an agent of the Company.

1.7. The Consultant shall have neither authority nor power to make/sign contracts on behalf of the Company, and, anyway, the Consultant does not have, nor will be hold himself out as having, any power or authority to assume, create or incur any expense, liability or obligation, expressed or implied, in the name and/or on behalf of the Company, or to act in the name and/or on behalf of the Company in any capacity or in any manner, nor shall be entitled or allowed to bind the Company towards third parties. The Consultant shall not be considered representative of the Company and therefore the former shall not have any of the related powers.

**Article 2. – Products and Services covered by the Agreement**

2.1 The Products and Services of the Company shall be offered to the Client for the negotiation, execution and fulfillment of the LOI.

**Article 3. – Consultant's duties and functions**

**3.1** The Consultant agrees to promote, in the best way possible and in accordance with the Company's instructions, the offer of the Products and Services for the LOI and to protect the Company's interests, all this with the diligence and reasonable care of a responsible businessman and to provide the activities in anyway related to the LOI.

**3.2** The Consultant shall assist the Company in the whole commercial aspects from obtaining specifications from the Client up to the final settlement of invoices corresponding to the preliminary activities to be carried out by the Company under the LOI.

**3.3** The Consultant is not authorized to negotiate with the Client any matter in connection with the LOI and the related supply of the Products and Services unless authorized in writing by the Company.

**3.4** The Consultant shall not make use of Company's trademarks, trade names or any other symbols. On the expiration of this Agreement the Consultant shall return to the Company the advertising material and any other documents which have been made available to the Consultant by the Company and are in the Consultant's possession.

**3.5** All above mentioned duties shall be provided mainly in Kazakhstan.

**Article 4. – Company's duties and functions**

**4.1** The Company will provide the Consultant with commercial and technical assistance at the Consultant's reasonable request as considered appropriate by the Company and with the useful advertising material (leaflets, price-lists) concerning the Products and the Services for the opportune distribution to the Client/s. Such material shall remain the property of the Company.

**4.2** The Company shall inform the Consultant within a reasonable time about the decision to accept or refuse any order received from the Client.

**4.3** The Company shall pay the Fees to the Consultant in accordance with Article 7. hereof.

## Article 5. – Undertaking not to compete and confidentiality

5.1 The Consultant shall not, without the Company's prior written authorisation, promote, represent, manufacture or market, for the whole term of this Agreement, any products and services which are in competition with the Products and Services of the Company specified in the offer for the LOI and/or in the LOI. In particular the Consultant undertakes not to act as Consultant, as commission merchant, reseller, distributor or in any other way, - within the Territory or elsewhere for the Territory -, directly or indirectly, for the benefit of third parties who manufacture, supply or market products and/or services which are in competition with the Products and/or Services covered by this Agreement or anyway in competition with the ones of the Company.

5.2 However, the Consultant may represent, market or manufacture non-competitive products and/or services (provided not for the benefit of competing Company) on condition that the exercise of such activity does not jeopardize or damage the punctual fulfilment of the Consultant's obligations under this Agreement.

5.3 The Consultant shall not reveal, either during the validity of the Agreement or after its termination, the Company's trade or commercial secrets or confidential information that have come to the Consultant's knowledge through his activities as Consultant for the Company, and agrees not to use such secrets or confidential information for purposes other than those of the present Agreement, unless or until (i) the prior approval of the disclosing Party; or (ii) the recipient is compelled to disclose such information by any governmental authority or pursuant to applicable law; or (iii) the recipient can reasonably demonstrate that the information is available in the public domain. Confidential information shall include the terms and conditions of this Agreement as well as the information on data, materials, products, technology, computer programs, specifications, designs, manuals, business plans, marketing plans, accounting and financial information, and other information disclosed or submitted, orally, in writing, or by any other media, to the Consultant by the Company (hereafter referred to as the "***Confidential Information***").

5.4 On termination of this Agreement for any reason the Consultant shall not retain any Confidential Information and shall upon request of the Company either return to the Company or destroy all Confidential Information which is in a tangible form and is in the possession of the Consultant pursuant to this Agreement, together with all copies thereof.

5.5 Notwithstanding the expiry of this Agreement and/or its termination for any cause, the obligations regarding confidentiality on Confidential Information shall last and shall expire after 12 months after any expiry or termination of the present Agreement.

### Article 6. – Sub-consultants

6.1 The Consultant may engage sub-consultants in order to be assisted in all or part of the Territory.

6.2 The Consultant shall be solely and entirely responsible for the activities of its sub-Consultants and shall be solely and entirely liable for the commission or any other kind of remuneration the sub-consultants might be entitled to.

### Article 7. – Fees

7.1 In case the LOI should be entered into within 30th April, 2008, the Consultant shall be entitled to a fee of 4% on the totality of invoices to be issued to the Client from the Company with respect to the preliminary activities to be carried out under the LOI, unless otherwise agreed, (hereinafter referred as to the "***Fees***"). The Fees shall be due only with respect to the preliminary activities to be carried out under the LOI, and also on payments made by the Client with respect to such preliminary activities after the expiration date of this Agreement.

7.2 Payment of Fees shall be on a pro-rata basis, against payments received by the Company from the Client, upon receipt of the relevant invoice from the Consultant, as better specified under Article 8. regarding payment details.

7.3 The Consultant shall be entitled to the Fees exclusively when the amounts to be paid under the LOI shall be effectively paid to the Company.

7.4 Any tax payable by the Consultant on Consultant's Fees shall be on the Consultant's account.

7.5 The Fees shall include the right of compensation for any cost and/or expenses incurred by the Consultants for the execution of the Agreement and, anyway, the Fees shall be inclusive of any right the Consultant may be entitled to in relation to the Agreement.

7.6 Notwithstanding the above, the Company shall compensate the Consultant for expenses incurred by the Consultant on the Company's behalf and fulfilling the Company's requirements, provided that the Company has agreed in writing in advance to the related amounts of costs. The expenses under this article shall be payable within 30 (thirty) working days from receipt of relevant Consultant's invoice.

### Article 8. – Payment of Fees

8.1 The Fees due to the Consultant under Article 7. shall be denominated and remitted in the same currency as the corresponding payment received by the Company. Payments shall be made to a bank account of the Consultant to be communicated to the Company by the Consultant.

8.2 The payment of the Fees shall be made at the same time in which the Company shall receive the payments from the Client.

**Article 9. – Abortive Business – Reduction of Project**

**9.1** No Fees shall be due in respect of orders not accepted by the Company and, under this respect, the Company shall retain its full and unconditioned right not to accept an order, without any need of explanation to the Consultant and any liability towards him for Fees or other compensation related to unaccepted orders.

**9.2** If the LOI should not be executed or, after its execution, should not be thereafter carried into effect, totally or partially, the Consultant shall not be entitled to the Fees with regard to, respectively, the LOI or the portion of the LOI that should not be fulfilled for any cause or reason.

**Article 10. – Policy of fairness**

**10.1** The Consultant represents and warrants that neither him nor any of his relatives, associates, affiliates, or other person or entity acting on the instruction or the interest of the Consultant, has made or offered and will not make or offer with respect to the activities which are the subject of the Agreement, any payment, gift, promise or other advantage, whether directly or through intermediaries, to or for the use of any public official (i.e., any person holding legislative, administrative or judicial office, including any person exercising a public function for a public agency, a public enterprise or a public international organisation), where such payment, gift, promise or advantage would violate the applicable laws of the countries where the activity of the Consultant is to be carried out under this Agreement, or the Laws of the country of incorporation of the Company and/or of the Consultant, or in general, the principles described in the Convention for Combating Bribery of Foreign Public Officials in International Business Transactions, signed in Paris on December 17th, 1997. The Consultant acknowledges the paramount importance of the aforesaid representation and warranty which is an essential feature of this Agreement, which will lead to immediate termination in the event of breach.

**Article 11. – Duration**

**11.1** This Agreement is valid and effective from the signature date till the duration of the LOI and any extension thereof.

**11.2** Neither Party shall be entitled to any indemnity or compensation for non-renewal or termination of the present Agreement.

## Article 12. – Arbitration

**12.1** In any dispute arising out of or in connection with the present Agreement, its execution and related payment, the Parties will meet and try to settle the matter amicably, also through an attempt to conciliate.

**12.2** If the Parties are unable to settle their dispute amicably, then the matter shall be settled in accordance with the rules of Conciliation and Arbitration of the International Chamber of Commerce by arbitration by single arbitrator to be appointed by the Chairman of the London Chamber of Commerce. All arbitration proceedings shall be held in London, in accordance with the Rules of Arbitration of the International Chamber of Commerce.

**12.3** The Arbitration shall be carried out in English language.

## Article 13. – Applicable law and language

**13.1** This Agreement shall be governed by and construed in accordance with British Law and Statutory Instruments.

**13.2** The governing language of the present Agreement and of any relations between the Parties (correspondence, notices, information etc.) shall be in English.

## Article 14. – Miscellaneous

**14.1** This Agreement is strictly confidential for both Parties, and its contents shall not be divulgated to third parties by either the Company or the Consultant.

**14.2.** The present Agreement shall constitute the entire Agreement between the Parties hereto and shall supersede and invalidate any prior Agreement or understanding between the Parties and any amendments hereto, whether written or oral.

**14.3.** No addition or modification or waiver to this Agreement shall be valid unless made in writing by duly authorized representatives of both Parties.

**14.4.** The rights and obligations arising from this Agreement may not be transferred in whole or in part by either of the Parties without the prior written consent of the other Party.

**14.5.** The non validity of any provision of this Agreement shall not affect the validity of any other provision. The invalid clause will be substituted with another mutual written agreement of the Parties.

**14.6.** The Consultant has no lien to the property of the Company.

## Article 15. – Execution of the Agreement

**15.1** The present Agreement has been signed and executed in two originals only with 15 (fifteen) Articles, this clause included.

**15.2** The Company and Consultant have each in their possession one original, and no other copy is valid.

**15.3** Any notice to be made under this Agreement shall be in writing and shall be valid and sufficient if sent by telefax, courier, or registered mail return receipt requested, addressed as follows:
JV SKEMA-TOZZI,
via Matera, n. 14
20031 Cesano Maderno – Milano – Italy
Attention to Mr. Mario Cerveglieri or to Agostino Bianchi;
TOP OIL UK
120 East Road
London N1 6AA
United Kingdom
Attention to Mr. Simon Gabathuler (Managing Director)

IN WITNESS WHEREOF, the Parties hereto have executed or caused this Agreement to be executed by their respective officers or representatives thereto duly authorised, all in the place and as of the date set forth below.

18th April, 2008

| JV SKEMA-TOZZI | TOP OIL UK |
|---|---|
| Mr. Mario Cerveglieri | Mr. Simon Gabathuler |
| Mr. Agostino Bianchi | |

The Parties declare to approve expressly and specifically the following Articles of this Agreement: 5) Undertaking not to compete and Confidentiality; 7) Fees; 8) Payment of Fees; 9) Abortive Business – Reduction and increase of Project; 11) Duration; 12-13) Arbitration - Applicable Law and language; 14) Miscellaneous.

18th April, 2008

| JV SKEMA-TOZZI | TOP OIL UK |
|---|---|
| Mr. Mario Cerveglieri | Mr. Simon Gabathuler |
| Mr. Agostino Bianchi | |

File : T:\lettere\protocolli 2008\consultant agreement 2008 - jv sk tz-top oil cte\consultant agreement 2008 - 18.04.08.doc