# EXHIBIT 6

| | | | |
|---|---|---|---|
| **No. 4108/16** | R.G. (registro generale [general register]) criminal records | No. [hw:]*119/17* Judgment Reg.<br>Date of Filing __________<br>Irrevocability Date: ________ | [hw:] *204* |
| **No. 3862/16** | R.G. G.I.P. (*giudice delle indagini preliminari* [preliminary investigations judge]) | No.________ Reg. Exec.<br>No.___________ Reg. Rec. Credits<br>SIC registration on ____________ | |

[emblem]

**COURT OF MONZA**
**Office of the Judge for Preliminary Investigations**

**ITALIAN REPUBLIC**
**IN THE NAME OF THE ITALIAN PEOPLE**

The Judge for Preliminary Investigations, Federica CENTONZE, at the hearing in chambers on February 10, 2017, issued and published by reading the following

**JUDGMENT OF SENTENCE APPLICATION**
**AT THE REQUEST OF THE PARTIES**
- Articles 444 et seq. of the Code of Criminal Procedure -

against:

**1) Mario Secondo CERVEGLIERI, born in Milan (MI) on [redacted], residing at [redacted] (MI) Italy, address for service/declared domicile at [redacted] (MI) Italy; absent** defended by retained counsel, Giacomo LUNGHINI and Davide SANGIORGIO of the Milan Bar; present

**2) Agostino BIANCHI, born in Florence (FI) on [redacted], residing at [redacted] (RA) Italy, address for service at the office of the retained counsel, SCUDELLARI; absent** defended by retained counsel, Giovanni SCUDELLARI of the Ravenna Bar; present

**3) DINAMO CONSORTIUM represented by its legal representative; absent**
defended by retained counsel, Giacomo LUNGHINI of the Milan Bar, present

having regard to Articles 444 et seq. of the Code of Criminal Procedure and 63 of Legislative Decree 231/2001,

**DEFENDANTS**

**BIANCHI Agostino** *(jointly with Paolo DENTALI, tried separately):*

**A) with regard to the crime envisaged and punished by Articles 110, 319, 321, 322 bis paragraph 2 of the Criminal Code, Articles 2 and 4 of Law 146 of March 16, 2006 because:**

- **Massimo GUIDOTTI, corruption broker, as actual manager of the companies G.M. Oil & Gas S.r.l. Consulenze Industriali (headquartered in Milan), TECNO SKILLS Ltd (headquartered in UK), ALVERSTONE INTERNATIONAL Inc (headquartered in USA TEXAS) and AVENTALL INTERNATIONAL Inc (headquartered in the British Virgin Islands), companies receiving funds intended for corrupt purposes;**
- **Agostino BIANCHI, corrupter, as Vice President of the DINAMO CONSORTIUM;**

**- Paolo DENTALI, corrupted person, as manager or otherwise member of AGIP KCO Corporate Procurement agreed with each other to pay sums of money to Kazakh public officials identified as:**

**- Idenov MAKSAT, as manager of KM;**

**- Timur KULIBAJEV, as manager of SAMRUK, the state-owned company controlling KAZ MUNAJ GAS/KMG:**

**- Bolat NAZAROV, as manager of KAZTRANGAZ,a state-owned natural gas transport company controlled by KAZ MUNAJ GAS/KMG.**

**to perform acts contrary to their official duties; acts consisting of the non-impartial selection of the contractor and, in particular, the entrustment to the DINAMO CONSORTIUM by the "Management Committee" (acronym MANCOM, established between North Caspian Sea Production contractors and the government of KAZAKHSTAN through the state-owned company, KAZ MUNAJ GAS/KMG), the body holding the relevant decision-making powers, and by the operator AGIP KCO of the execution of works under contract no. 2004/1089 approved on 02/01/2007.**

**Sum paid by Guidotti to the aforementioned Public Officials through the monetization of fees invoiced by TECHNO SKILLS Ltd to DINAMO CONSORTIUM in relation to contracts for non-existent commercial transactions (indicated as consulting and marketing services), occurring in TECHNO SKILLS accounts in cash and through other apparent commercial relations with ALVERSTONE INTERNATIONAL INC and AVENTALL INTERNATIONAL Inc.**

**In Cesano Maderno from 2006 to 2009.**

**Agostino BIANCHI***(jointly with Hormoz VASFI, Simon GABATHULER and Paolo DENTALI, tried separately):*

**B) with regard to the crime envisaged and punished by Articles 110, 319, 321, 322 bis paragraph 2 of the Criminal Code, Articles 2 and 4 of Law 146 of March 16, 2006 because:**

**- Hormoz VASFI, corruption broker, as the actual manager of companies receiving funds intended for corrupt purposes, TOP OIL UK (headquartered in London), SMEKRANO HOLDING LIMITED Ltd (subsequently called TOP OIL CYPRUS LIMITED, headquartered in Limassol, Cyprus), and the companies TECRON S.r.l. (headquartered in Rome), ALVIER Ltd (headquartered in Nassau, Bahamas) and BELAND Ltd (headquartered in the UK);**

**- Simon GABATHULER, corruption broker, Director of Top Oil;**

**- Agostino BIANCHI, corrupter, as Vice President of the DINAMO CONSORTIUM;**

**- Paolo DENTALI, corrupted person, as manager or otherwise member of AGIP KCO Corporate Procurement;**

**agreed with each other to pay sums of money, through TOP OIL UK and TOP OIL CYPRUS LIMITED, formerly SMEKRANO HOLDING LIMITED, to Paolo DENTALI, an Italian public official (ENI executive) who holds decision-making powers within "Mancom", and to the following Kazakh public officials:**

**- Idenov MAKSAT, as manager of KM;**

**- Timur KULIBAJEV, as manager of SAMRUK, the state-owned company controlling KAZ MUNAJ GAS/KMG:**

**- Bolat NAZAROV, as manager of KAZTRANGAZ,a state-owned natural gas transport company controlled by KAZ MUNAJ GAS/KMG**

**to perform acts contrary to their official duties, consisting of selecting the contractor in a non-impartial manner and in particular:**

**- amendment of contract no. 2004/1089 (referred to in the previous charge A) on 04/07/2011, after five revisions;**
**- execution of contract no. 2008/0163, approved by "MANCOM" on 10/21/2011, and signed by AGIP KCO, relating to "EPC offshore Building Out of Country", and subsequent revisions**
**Sum paid by VASFI to the aforementioned Italian and Kazakh public officials through the monetization of fees invoiced by TOP OIL to DINAMO CONSORTIUM for contracts related to non-existent commercial operations (indicated as consulting and marketing services) and the monetization, which took place on the covered accounts, "Paddlock" and "Piccoli Alberi", attributable to VASFI and funded by the foreign entities, ALVIER Ltd and SUPREMEX Ltd.**
**In Cesano Maderno from 2007 to 2011.**

**Mario Secondo CERVEGLIERI:**
**C) with regard to the crime envisaged and punished by Articles 81, 110 of the Criminal Code, 2 Legislative Decree 74/00 because, with multiple enforcement actions of the same criminal design, at different times, in order to evade income taxes, as Chairman of the DINAMO CONSORTIUM, he indicated in the tax returns submitted by the DINAMO CONSORTIUM for the years from 2006 to 2011, fictitious passive elements consisting of invoices for non-existent business operations, concerning consultations, issued for the amounts and by the companies listed below:**

- **TECHNO SKILLS Ltd, attributable to Massimo Guidotti:**
  **Total year 2006: Euro 648,327.87,**
  **Total year 2007: Euro 317,187.98.**
  **Total for year 2008: Euro 136,789.55.**
- **TOP OIL Ltd, incorporated under English law, attributable to Hormoz Vasfi**
  **Total year 2007: Euro 173,679.87 (USD 250,000.00),**
  **Total for year 2008: Euro 1,965,090.61 (USD 2,893,030.00).**
  **Total for year 2009: Euro 2,213,220.31.**
- **T-O TOP OIL (CYPRUS) Ltd, formerly SMEKRANO HOLDING Ltd, a Cypriot company attributable to Hormoz Vasfi:**
  **Total for year 2010: Euro 10,620,513.56.**
  **Total for year 2011: Euro 3,165,270.35.**

**In Cesano Maderno from 2006 to 2011.**

**DYNAMO CONSORTIUM**
**H) with regard to the administrative offense provided for and punishable by Articles 5 letter A) 25 paragraph II, 36 Legislative Decree 231/01 because it took advantage of the corruption offense referred to in charges A) and B) committed by the Deputy Chairman of the Consortium, senior manager, Agostino BIANCHI.**
**The advantage consisted in obtaining from Agip KCO in favor of DINAMO CONSORTIUM the stipulation of contract 2004/1089, its amendment on 04/07/2011, and the stipulation of contract 2008/0163, resulting in a profit quantifiable as 6,583,812.11 Euros. With negligence consisting of the failure to prepare and adopt an organizational model for the prevention of criminal offenses specifically indicated in Legislative Decree 231/01, particularly the crime of corruption against which the consortium activities are at risk.**
**In Cesano Maderno from 2009 to 2011.**

**REASON**

Having read the records of the criminal proceedings indicated above (excerpt of criminal proceeding No. 15858/13) containing a request for application of the sentence during the preliminary investigations pursuant to Art. 447 of the Code of Criminal Procedure;

Having noted that at the Chamber Hearing of February 10, 2017, the parties referred to the request for application of the sentence filed on April 21, 2016;

Considering that, with regard to **Agostino BIANCHI**, the parties quantified the sentence as:
basic sentence: considering the offense referred to in charge b) as more serious, two years of imprisonment;
increased pursuant to Art. 41 of Law 146/2006: two years and eight months of imprisonment;
*reduced pursuant to Art. 62 bis of the Italian Criminal Code for lack of criminal record and procedural behavior:* one year, nine months, and ten days of imprisonment;
increased due to continuation pursuant to Art. 81 of the Italian Criminal Code: two years of imprisonment;
*finally reduced due to the plea bargain to:* **one year and four months of imprisonment, subject to conditional suspension of the sentence.**
It should be noted that the entire illicit profit amounting to 6,583,812.11 euros has already been seized for the purpose of confiscation with respect to DINAMO CONSORTIUM.

Considering that, with regard **to Mario Secondo CERVEGLIERI,** the parties quantified the sentence as: *basic sentence*: (year 2010) one year and six months of imprisonment;
*reduced due to the mitigating circumstance referred to in Art. 13 of Legislative Decree 74/2000: one year of imprisonment; reduced pursuant to Art. 62 bis of the Italian Criminal Code:* eight months of imprisonment;
*increased due to continuation pursuant to Art. 81 of the Italian Criminal Code:* nine months of imprisonment (for the offense referred to in Art. 2 of Legislative Decree 74/2000 for the year 2009, 15 days of imprisonment; for the offense referred to in Art. 2 of Legislative Decree 74/2000 for the year 2011: 15 days of imprisonment);
*finally reduced due to the plea bargain to:* **six months of imprisonment, converted pursuant to Art. 53 of Law 689/1981 to a fine of €45,000.00.**

Considering that, with regard **to the Dinamo CONSORTIUM,** the parties quantified the administrative penalty as:
*basic administrative penalty:* 300 units;
*reduced pursuant to Art. 12, paragraph 2, letter b) of Legislative Decree 231/2001:* 150 units;
*reduced due to the procedure to the final administrative penalty:* **100 units, each worth €258, for a total amount of €25,800.00;**

**with the confiscation of the amount of €6,583,812.11 pursuant to Articles 19 and 25, paragraph 2 of Legislative Decree 231/2001 and Article 322-ter of the Italian Criminal Code.**

Considering that the conditions are met to deem the request admissible, since the legal qualification of the fact, the application and comparison of the circumstances proposed by the parties are correct. Regarding the delimitation of the scope of the charges, the defense brief is fully referenced with the consequent request for archiving made by the Public Prosecutor and accepted by the Preliminary Investigation Judge with an order dated November 23, 2016.

The defendants' clean criminal records, along with their cooperative procedural conduct and, in CERVEGLIERI's case, the settlement of the tax debt, allow for the application of generic mitigating circumstances and, for CERVEGLIERI, also the mitigating circumstance under Art. 13 of Legislative Decree 74/2000 (see attachment 6 to the defense brief dated April 20, 2016).
The Entity may be granted the mitigating circumstance referred to in Art. 12, paragraph 2, letter b) of Legislative Decree 231/2001: the profit subject to confiscation was in fact made available by the entity itself, as explained in the defense brief filed on December 15, 2016, and in the attached documents (see in particular the seizure decree dated February 29, 2016).

Considering that none of the hypotheses under Art. 129 of the Code of Criminal Procedure exist, with unequivocal elements of liability brought to light by the documents, particularly from the judicial police notes in criminal proceeding 25303/10 from the Public Prosecutor's Office of Milan and attached documents; expert reports by Mr. Pireddu dated March 2, 2015, and July 29, 2015, and subsequent ones; reports on interrogation of the defendants GUIDOTTI and CERVEGLIERI and defense briefs pursuant to Art. 415bis of the Code of Criminal Procedure; information and tax audits no. 713893/15, 716578/15, 543673/15, 121092/16; seizure order of February 29, 2016.

Noting that, regarding CERVEGLIERI, the imposed sentence can be converted, as there are no reasons preventing this; that, regarding BIANCHI, the occasional nature of the criminal conduct, the clean criminal record, and good procedural behavior allow for a favorable prognosis concerning future abstention from committing further crimes;

considering that, pursuant to Art. 17 of Legislative Decree 231/2001, making the profit of the crime available prevents the application of interdictory sanctions against the entity;

having considered that, pursuant to Article 19 of Legislative Decree 231/2001, the mandatory confiscation of the profit of the crime must be ordered, identified by the Public Prosecutor in the amount of €6,**583,812.11 already subject to evidentiary seizure, with the return of the remaining amount to the entity;**

having seen and applied Articles 444 et seq. of the Code of Criminal Procedure

**For these reasons**

**hereby applies,** at the request of the parties, to:
**Mario Secondo CERVEGLIERI** the sentence of **six months imprisonment,** granting general mitigating circumstances as well as the mitigating circumstance referred to in Art. 13 of Legislative Decree 74/2000, considering the continuation among the crimes, subject to the reduction due to the plea bargain;
sentence converted pursuant to Art. 53 of Law 689/81 to a fine of €**45,000.00;**

**Agostino BIANCHI** is sentenced to one year and four months of imprisonment, with general mitigating circumstances granted, continuation between the crimes considered,, and reduction applied for the plea bargain; sentence suspended;

**DINAMO CONSORTIUM** the administrative penalty of 100 units with a value of €258.00 each, for a total of **€25,800.00,** with the mitigating circumstance referred to in Art. 12 of Legislative Decree 231/2001 granted, and reduction applied due to the plea bargain;

in view of Art. 19 of Legislative Decree 231/2001,

**HEREBY ORDERS**

**the confiscation, against CONSORZIO DINAMO, of the amount of €6,583,812.11**, ordering the release from seizure and the return of the residual sum to the same.

The court reserves the right to file the reasons within fifteen days.

Monza, February 10, 2017

The Judge for Preliminary Investigations
Federica CENTONZE

[signature]

[hw:] *Filed 02/21/14*
[illegible]
[illegible]

[signature]

TRANSPERFECT

City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the following documents are, to the best of my knowledge and belief, true and accurate translations from Italian into English:

- The Plea Bargaining Judgment No. 119/17 of the Court of Monza dated February 10, 2017.
- The Crime Report by the Financial Police of Milan in relation to the criminal investigation No. 25303/10 dated May 30, 2014.

____________________
Jacqueline Yorke

Sworn to before me this
March 24, 2025

____________________
Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27

____________________
Stamp, Notary Public

| | | | |
|---|---|---|---|
| N. 4108/16 | R.G. notizie di reato | N. 119/17 **Reg. Sent.** | 206 |
| N. 3862/16 | R.G. G.I.P. | Data del Deposito ______________<br>Data di Irrevocabilità: ____________<br>N. __________ Reg. Esec.<br>N. _____________ Reg. Rec. Crediti<br>Iscrizione al SIC il ______________ | |

**TRIBUNALE DI MONZA**
**Ufficio del Giudice per le indagini preliminari**

**REPUBBLICA ITALIANA**
**IN NOME DEL POPOLO ITALIANO**

Il Giudice per le indagini preliminari Federica CENTONZE all'udienza in camera di consiglio del 10/2/2017 ha pronunziato e pubblicato mediante lettura la seguente

**SENTENZA DI APPLICAZIONE PENA**
**SU RICHIESTA DELLE PARTI**
- artt. 444 e segg. c.p.p.-

nei confronti di:
**1) CERVEGLIERI Mario Secondo, nato a Milano (MI) il [redacted], residente in [redacted] (MI) Italia, domicilio eletto/dichiarato in [redacted] (MI) Italia; assente**
difeso di fiducia dagli avv. Giacomo LUNGHINI e Davide SANGIORGIO del foro di Milano; presenti

**2) BIANCHI Agostino, nato a Firenze (FI) il [redacted], residente in [redacted] (RA) Italia, domicilio eletto presso il dfensore di fiducia avv. SCUDELLARI; assente**
difeso di fiducia dall'avv.Giovanni SCUDELLARI del foro di Ravenna; presente

**3) CONSORZIO DINAMO in persona del legale rappresentante; assente**
difeso di fiducia dall'avv. Giacomo LUNGHINI del foro di Milano, presente

visti gli artt. 444 e segg. c.p.p. e 63 d. l.vo 231/2001,

**IMPUTATI**

**BIANCHI Agostino** *(in concorso con DENTALI Paolo, giudicato separatamente)*:

**A) in ordine al delitto previsto e punito dagli articoli 110, 319, 321, 322 bis comma 2 codice penale, artt. 2 e 4 Legge 146 del 16.3.2006 perché:**

**– GUIDOTTI Massimo, mediatore della corruzione, quale effettivo gestore delle società G.M. Oil& Gas S.r.l. Consulenze Industriali (con sede in Milano), TECNO SKILLS ltd (con sede in UK), ALVERSTONE INTERNATIONAL inc (con sede in USA TEXAS) e AVENTALL INTERNATIONAL inc (con sede nelle British Virgin Islands), società destinatarie delle provviste destinate a finalità corruttive;**

**- BIANCHI Agostino, corruttore, quale vice Presidente del CONSORZIO DINAMO;**

205

- DENTALI Paolo, corrotto, quale responsabile o comunque membro di Corporate Approvvigionamenti AGIP KCO
si accordavano tra di loro per versare somme di denaro a pubblici ufficiali kazakhi identificati in:
-MAKSAT Idenov, quale dirigente di KM;
-KULIBAJEV Timur, quale dirigente di SAMRUK, società pubblica di controllo di KAZ MUNAJ GAS/KMG:
- NAZAROV Bolat, quale dirigente di KAZTRANGAZ, società pubblica di trasporto gas naturale controllata da KAZ MUNAJ GAS/KMG.
affinché compissero atti contrari ai loro doveri d'ufficio; atti consistiti nella scelta del contraente in modo non imparziale ed in particolare nell'affidamento al CONSORZIO DINAMO da parte del "Management Committee" (in acronimo, MANCOM, costituito tra i contractor di North Caspian Sea Production e il governo del KAZAKHISTAN attraverso la società pubblica KAZ MUNAJ GAS/KMG), organo titolare dei relativi poteri decisionali, e da parte dell'"operator" AGIP KCO l'esecuzione dei lavori del contratto n. 2004/1089 approvato in data 01.02.2007.
Somma pagata da Guidotti ai predetti Pubblici Ufficiali attraverso la monetizzazione dei corrispettivi fatturati da TECHNO SKILLS Ltd a CONSORZIO DINAMO in relazione a contratti relativi ad operazioni commerciali inesistenti (indicate in servizi di consulenza e marketing) ed avvenuta sui conti di TECHNO SKILLS in contanti e attraverso ulteriori apparenti rapporti commerciali con ALVERSTONE INTERNATIONAL INC e con AVENTALL INTERNATIONAL Inc.
In Casano Maderno dal 2006 al 2009.

BIANCHI Agostino *(in concorso con VASFI Hormoz, GABATHULER Simon e DENTALI Paolo, giudicati separatamente)*:
B) in ordine al delitto previsto e punito dagli articoli 110, 319, 321, 322 bis comma 2 codice penale, artt. 2 e 4 Legge 146 del 16.3.2006 perché:
- VASFI Hormoz, mediatore della corruzione, quale effettivo gestore delle società destinatarie delle provviste destinate a finalità corruttive, TOP OIL UK (con sede a Londra), SMEKRANO HOLDING LIMITED Ltd (poi denominata TOP OIL CYPRUS LIMITED, con sede a Limassol, Cipro), e delle società TECRON S.r.l. (con sede a Roma) ALVIER Ltd (con sede a Nassau Bahamas) e BELAND Ltd (con sede in UK);
- GABATHULER Simon, mediatore della corruzione, Director di Top Oil;
- BIANCHI Agostino, corruttore, quale vice Presidente del CONSORZIO DINAMO;
- DENTALI Paolo, corrotto, quale responsabile o comunque membro di Corporate Approvvigionamenti AGIP KCO;
si accordavano tra di loro per versare somme di denaro, attraverso TOP OIL UK e TOP OIL CYPRUS LIMITED, già SMEKRANO HOLDING LIMITED, a DENTALI Paolo, pubblico ufficiale italiano (dirigente di ENI) titolare di poteri decisionali nell'ambito di "Mancom", e ai seguenti pubblici ufficiali kazakhi:
- MAKSAT Idenov, quale dirigente di KM;
- KULIBAJEV Timur, quale dirigente di SAMRUK, società pubblica di controllo di KAZ MUNAJ GAS/ KMG:
- NAZAROV Bolat, quale dirigente di KAZTRANGAZ, società pubblica di trasporto gas naturale controllata da KAZ MUNAJ GAS/KMG
affinché compissero atti contrari ai loro doveri d'ufficio, atti consistiti nella scelta del contraente in modo non imparziale ed in particolare nella:

206

- integrazione del contratto n. 2004/1089 (di cui al precedente capo A di imputazione) avvenuta in data 07.04.2011, dopo cinque revisioni;
- conclusione del contratto n. 2008/0163, deliberato da "MANCOM" in data 21.10.2011, e stipulato da AGIP KCO, relativo a "EPC offshore Building Out of Country", e successive revisioni

Somma pagata da VASFI ai predetti pubblici ufficiali italiano e kazakhi attraverso la monetizzazione dei corrispettivi fatturati da TOP OIL a CONSORZIO DINAMO in relazione a contratti relativi ad operazioni commerciali inesistenti (indicate in servizi di consulenza e marketing) e la monetizzazione, avvenuta sui conti coperti "Paddlock" e "Piccoli Alberi" riconducibili a VASFI ed alimentati dalle strutture estere ALVIER Ltd e SUPREMEX Ltd.
In Cesano Maderno dal 2007 al 2011.

CERVEGLIERI Mario Secondo:
C) in ordine al delitto previsto e punito dagli articoli 81, 110 codice penale, 2 Decreto Legislativo 74/00 perché, con più azioni esecutive del medesimo disegno criminoso, in tempi diversi, al fine di evadere le imposte sui redditi, quale Presidente del CONSORZIO DINAMO indicava nelle dichiarazioni dei redditi presentate dal CONSORZIO DINAMO per le annualità dal 2006 al 2011, elementi passivi fittizi costituiti da fatture per operazioni commerciali inesistenti, aventi ad oggetto consulenze, emesse per gli importi e dalle società sotto riportate:

- TECHNO SKILLS Ltd, riconducibile a Massimo Guidotti:
  - Totale anno 2006: Euro 648.327,87.
  - Totale anno 2007:Euro 317.187,98.
  - Totale anno 2008: Euro 136.789,55.
- TOP OIL Ltd, di diritto inglese, riconducibile a Vasfi Hormoz
  - Totale anno 2007: Euro 173.679,87 (USD 250.000,00).
  - Totale anno 2008: Euro 1.965.090,61 (USD 2.893.030,00).
  - Totale anno 2009: Euro 2.213.220,31.
- T-O TOP OIL (CYPRUS) Ltd, già SMEKRANO HOLDING Ltd, di diritto cipriota, riconducibile a Vasfi Hormoz:
  - Totale anno 2010 Euro 10.620.513,56.
  - Totale anno 2011 Euro 3.165.270,35.

In Cesano Maderno dal 2006 al 2011.

CONSORZIO DINAMO
H) in ordine all'illecito amministrativo p. e p. dagli artt. 5 lett. A) 25 II comma, 36 D.lvo 231/01 perché si avvantaggiava del reato di corruzione di cui ai capi A) e B) commesso dal Vice Presidente del Consorzio, soggetto apicale, Agostino BIANCHI.
Vantaggio consistito nell'ottenere da Agip KCO in favore di CONSORZIO DINAMO la stipulazione del contratto 2004/1089, la sua integrazione in data 07.04.2011 e la stipulazione del contratto 2008/0163, con conseguente profitto quantificabile in Euro 6.583.812,11. Con colpa consista nella mancata predisposizione e adozione di un modello organizzativo per la prevenzione degli illeciti penali specificamente indicati nel Decreto Legislativo 231/01 ed in particolare del delitto di corruzione rispetto al quale le attività consortili sono a rischio.
In Cesano Maderno dal 2009 al 2011.

## MOTIVAZIONE

Letti gli atti del procedimento penale sopra indicato (stralcio del p.p. 15858/13 n.r.) contenente richiesta di applicazione della pena nel corso delle indagini preliminari ai sensi dell'art. 447 c.p.p.; 207

rilevato che all'udienza camerale del 10 febbraio 2017 le parti si sono riportate alla richiesta di applicazione della pena ai sensi depositata in data 21 aprile 2016;

Considerato che, quanto a **BIANCHI Agostino**, le parti hanno quantificato la pena in:
*pena base:* ritenuto più grave il reato di cui al capo b), anni due di reclusione;
*aumentata ai sensi dell'art. 4 l. 146/2006:* anni due e mesi otto di reclusione;
*ridotta ex art. 62 bis c.p. per l'incensuratezza e il comportamento processuale:* anni uno e mesi nove e giorni dieci di reclusione;
*aumentata per la continuazione ex art. 81 c.p.v.*: anni due di reclusione;
*ridotta infine per il rito a*: **anni uno e mesi quattro di reclusione, subordinata alla sospensione condizionale della pena.**
Si precisa che l'intero profitto illecito pari a 6.583.812,11 euro già oggetto di sequestro finalizzato alla confisca nei confronti di CONSORZIO DINAMO.

Considerato che, quanto **a CERVEGLIERI Mario Secondo**, le parti hanno quantificato la pena in:
*pena base: (*annualità 2010) anni uno e mesi sei di reclusione;
*ridotta per la circostanza attenuante di cui all'art. 13 d.lgs. 74/2000*: anni uno di reclusione;
*ridotta ex art. 62 bis c.p.:* mesi otto di reclusione;
*aumentata per la continuazione ex art. 81 c.p.v.*: mesi nove di reclusione (per il reato di cui all'art. 2 d.lgs. 74/2000 per l'anno 2009, 15 giorni di reclusione; per il reato di cui all'art. 2 d.lgs. 74/2000 per l'anno 2011: 15 giorni di reclusione);
*ridotta infine per il rito a*: **mesi sei di reclusione, convertita ex art. 53 l. 689/1981 in euro 45.000,00 di multa.**

Considerato che, quanto a **CONSORZIO Dinamo**, le parti hanno quantificato la sanzione amministrativa in:
*sanzione amministrativa base:* 300 quote;
*ridotta ex art. 12 comma 2 lett. b) d. l.vo 231/2001:* 150 quote;
*ridotta per il rito alla sanzione amministrativa finale*: **100 quote, ciascuna di 258 euro, per un ammontare complessivo di 25.800,00 euro**;

**con la confisca dell'importo di € 6.583.812,11 ai sensi degli artt. 19 e 25 co. 2 d. l.vo 231/2001 e 322*ter* c.p.**

Considerato che sussistono le condizioni per ritenere ammissibile la richiesta, in quanto la qualificazione giuridica del fatto, l'applicazione e la comparazione delle circostanze prospettate dalle parti sono corrette. Quanto alla delimitazione del perimetro delle imputazioni si richiama integralmente la memoria difensiva con conseguente richiesta di archiviazione avanzata dal P.M. ed accolta dal g.i.p. con ordinanza del 23.11.2016.

208

L'incensuratezza degli imputati, unitamente al comportamento processuale collaborativo e, quanto a CERVEGLIERI, l'estinzione del debito tributario, consentono l'applicazione delle attenuanti generiche e, per CERVEGLIERI, anche dell'attenuante di cui all'art. 13 d.lgs. 74/2000 (v. all. 6 alla memoria difensiva del 20.4.2016).
Può essere riconosciuta all'Ente la circostanza attenuante di cui all'art. 12 comma 2 lett. b) d. l.vo 231/2001: il profitto oggetto di confisca è infatti stato messo a disposizione dall'ente stesso, come illustrato nella memoria difensiva depositata in data 15.12.2016 e negli atti allegati (v. in particolare il decreto di sequestro in data 29.2.2016).

Considerato che non sussiste alcuna delle ipotesi di cui all'art. 129 c.p.p., emergendo dagli atti univoci elementi di responsabilità, desumibili in particolare le note di p.g. nel p.p.- 25303/10 proveniente dalla Procura della Repubblica di Milano ed atti allegati; consulenze tecniche dr. Pireddu del 2.3.2015 e 29.7.2015 e successive; verbali di interrogatorio degli imputati GUIDOTTI e CERVEGLIERI e memorie difensive *ex* art. 415*bis* c.p.p.; informative e verifiche fiscali n. 713893/15, 716578/15; 543673/15, 121092/16; decreto di sequestro del 29.2.2016.

Rilevato che, quanto a CERVEGLIERI la pena inflitta può essere convertita, non essendovi in tal senso ragioni ostative; che, quanto a BIANCHI, l'occasionalità della condotta delittuosa, l'incensuratezza ed il buon comportamento processuale consentono una prognosi favorevole in ordine alla futura astensione dalla commissione di ulteriori reati;

considerato che, ai sensi dell'art. 17 d. l.vo 23172001, la messa a disposizione del profitto del reato impedisce l'applicazione delle sanzioni interdittive nei confronti dell'ente;

ritenuto che, ai sensi degli artt. 19 d. l.vo 231/2001 deve essere disposta la confisca obbligatoria del profitto del reato, individuato dal P.M. nell'importo di € **6.583.812,11 già oggetto di sequestro probatorio, con la restituzione all'ente della somma residua;**

visti e applicati gli artt. 444 e segg. c.p.p.

**P.Q.M.**

**applica,** su richiesta delle parti, a carico di:
**CERVEGLIERI Mario Secondo** la pena di **sei mesi di reclusione**, concesse le attenuanti generiche nonchè l'attenuante di cui all'art. 13 d. l.vo 74/2000, ritenuta la continuazione tra i reati, operata la riduzione per il rito;
pena convertita *ex* art. 53 l. 689/81 nell'importo di **€ 45.000,00 di multa**;

**BIANCHI Agostino** la pena di **un anno e quattro mesi di reclusione**, concesse le attenuanti generiche, ritenuta la continuazione tra i reati, operata la riduzione per il rito;
pena sospesa;

**CONSORZIO DINAMO** la sanzione amministrativa di 100 quote del valore di 258,00€, per un totale di **25.800,00€**, concessa l'attenuante di cui all'art 12 d.vo 231/2001, operata la riduzione per il rito;

visto l'art. 19 d. l.vo 231/2001,

**ORDINA**

**la confisca, a carico di CONSORZIO DINAMO, dell'importo di € 6.583.812,11,** disponendo il dissequestro e la restituzione allo stesso della somma residua. 709

Riserva il deposito della motivazione entro giorni quindici.

Monza, il 10/02/2017

Il Giudice per le Indagini Preliminari
Federica CENTONZE

Dep. 21/2/17
IL C...