**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PSA LLC,<br><br>Applicant,<br><br>v.<br><br>MAKSAT IDENOV,<br><br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.: 4:25-mc-00536 |

---

**MOTION TO INTERVENE AND QUASH SUBPOENA AND VACATE *EX PARTE* ORDER ISSUED UNDER 28 U.S.C. § 1782**

---

Pursuant to 28 U.S.C. § 1782 and Rules 24 and 45 of the Federal Rules of Civil Procedure, Proposed Intervenor Eni US Operating Co. Inc. (***Eni US***) files this Motion to Intervene and Quash the subpoena served by Applicant PSA LLC (***PSA*** or ***Applicant***) on Mr. Maksat Idenov (the ***Idenov Subpoena***); to vacate the Court's Order of April 3, 2025, granting PSA's *ex parte* application under § 1782 in this case (***Application*** or ***Idenov § 1782 Proceeding***); or, in the alternative, to impose necessary restrictions on the use of any evidence taken.

## PRELIMINARY STATEMENT

Eni US is the sole respondent in a one the three substantively identical § 1782 applications pending before this Court: *In re Application of PSA LLC v. Eni US Operating Co. Inc.*, Case no. 4:25-mc-00538 (S.D. Tex) (***Eni US § 1782 Proceeding***). Eni US seeks to intervene and quash the Idenov Subpoena because both § 1782 actions—against it and Mr. Idenov—do not comply with the statutory requirements and discretionary factors for the issuance of a subpoena and taking of evidence for use in a foreign proceeding. The Application appears to be an effort to circumvent the Supreme Court's decision in *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022), which held that a private international arbitral proceeding cannot serve as the basis for § 1782 discovery. Applicant has filed stale and repetitive claims in Switzerland (the ***Swiss Proceeding***) as a putative anchor for this discovery while a related arbitration is underway. In this way and others, the Application is also an effort to circumvent foreign proof-gathering restrictions. Because Eni US is subject to a virtually identical subpoena for documents and testimony, Eni US has a unique perspective to offer the Court as it weighs PSA's satisfaction of the statutory and discretionary elements of § 1782 and considers Mr. Idenov's motion to quash and vacate the Court's *ex parte* Order. ECF No. 3.

Counsel for Eni US met and conferred with counsel for Mr. Idenov, who consented to intervention. Counsel for Eni US reached out to counsel for PSA to seek consent to intervene, and PSA opposed Eni US's intervention. For the reasons set forth below, Eni US respectfully requests that this Court grant its motion to intervene, and its motion to quash the Idenov Subpoena, and vacate the Court's Order of April 3, 2025. ECF No. 3.

## BACKGROUND

### I. The Projects in Kazakhstan

In 1997, the Republic of Kazakhstan entered into Production Sharing Agreements with two different consortia of international energy companies. *See* Exhibits 1 & 2. The first relates to a project in the northern Caspian Sea (the ***Kashagan Project***). *See* Exhibits 3 & 4. The second relates to a project in western Kazakhstan (the ***Karachaganak Project***, and together with the Kashagan Project, the ***Projects***). *See* Exhibit 2.

Eni S.p.A. (***Eni SpA***), the global parent entity of Eni subsidiaries and affiliates around the world, is involved in both Projects through two Dutch-incorporated entities, Agip Caspian Sea B.V. (***Agip Kashagan***) and Agip Karachaganak BV (***Agip Karachaganak***). *See* Exhibits 5 & 6.

### II. The Corruption Allegations

PSA alleges that the defendants in the Swiss Proceeding "engaged in a number of abusive, fraudulent, and/or corrupt practices inflicting harm upon PSA during the development of the Kashagan and Karachaganak fields by their respective operators." Memorandum of Law in support of PSA's Application (***MOL***)—ECF No. 2, p. 3. No entity of the Eni corporate group is a defendant in the Swiss Proceedings and PSA does not make a single allegation against Eni US in either its § 1782 Application or in its Request for Conciliation in Switzerland.

These are, moreover, not new allegations. The Public Prosecutor's offices in Milan, Italy has conducted a multi-year investigation into the procurement practices at the Kashagan Project.

*See* Exhibit 7. The investigation was wide-ranging, including the collection of reams of documents from Eni SpA and the interrogation of Eni SpA managers. *See* Exhibit 8, p. 212. In September 2016, the Milan Public Prosecutor requested the Milan court to close the investigation due to the "unfounded nature of the crime." *See* Exhibit 9. In January 2017, the Milan court granted the Prosecutor's request. *See* Exhibit 10, pp. F-96-F-97 (pp. 304-305 of PDF).

This was not the only investigation into these allegations. In November 2007, the Republic of Kazakhstan commenced its own investigation into the awarding of contracts at the Kashagan Project. Exhibit 11, p. 189. In 2011, after four years of inquiry, the Republic of Kazakhstan also terminated that investigation without bringing any charges against Eni SpA, its affiliate entities, or their employees. *Id*. These investigations were widely reported by the international and Kazakhstan-based media, making it difficult to credit PSA's statement that it was unaware of these events until the "fall of 2023" (MOL, ECF No. 2, p. 3).

Eni US was not implicated in any of the investigations in Italy or Kazakhstan. Nor is any allegation made against it in the Swiss Proceeding, which appears to arise out of the actions of two employees of subcontractors to the Projects: Mr. Agostino Bianchi and Mr. Mario Carveglieri, both of whom entered into plea-bargains in a separate criminal investigation in Monza, Italy. *See* PSA's Request for Conciliation, Exhibit 3 to the Declaration of Philippe Neyroud (***Neyroud Declaration***), ECF No. 2-4, pp. 5, 10 & ¶ 17. According to press reports, "neither Eni[SpA] nor [Eni SpA's managers were] under investigation" in Monza; to the contrary, Eni SpA "declare[d] itself a 'potential damaged party'" in the alleged scheme. Exhibit 12. The press also reported that the Monza prosecutor "does not hypothesize that the top management of the Italian group [Eni even] knew about the alleged bribes," and that the "corrupt people [in those proceedings] are instead Kazakh state executives." *Id.*

## III. THE UNDERLYING ARBITRATIONS AND THE NEW SWISS PROCEEDING

Omitted entirely from PSA's Application is the fact that its owner, the Republic of Kazakhstan, has raised similar corruption allegations in multi-billion-dollar arbitrations against the consortium members involved in the Projects—including companies within the Eni corporate group (***Arbitrations***). It has been publicly reported that, in 2024, the Republic of Kazakhstan alleged that the Production Sharing Agreements were "tainted by corruption." Exhibit 13.

The timing of these three substantively identical § 1782 applications thus comes into focus. Not long after the Republic lodged corruption allegations in the Arbitrations, on March 20, 2025, PSA filed its Request for Conciliation in Switzerland. A mere five days later, it filed three *ex parte* § 1782 applications in this Court, including against Mr. Idenov and Eni US, seeking evidence of corruption arising out of the Projects in Kazakhstan.[1] Given the timing, the preparation of both the Swiss and U.S. pleadings was likely simultaneous. The Swiss Proceeding is "not publicly accessible," and the details are not accessible to Eni US. *See* Declaration of Louis Burrus (***Burrus Declaration***), ¶¶ 5 & 6. Eni US only learned of the Swiss Proceeding upon reviewing the Eni US § 1782 Proceeding, and it does not have access to the exhibits referenced in the Request for Conciliation, as these documents were not disclosed in the Application by PSA "and are not otherwise publicly available." Burrus Declaration, ¶ 6.

## ARGUMENT

In the sections that follow, Eni US will address its ability to intervene (*see infra* § II.A.), the reasons why the Court should vacate its prior Order of April 3, 2025 (ECF No. 3) and quash the Idenov Subpoena (*see infra* § II.B.), or, in the alternative, impose limitations on the use of any

[1] On the same day that PSA filed its application against Eni US and Respondent, it also filed another almost identical § 1782 application against Mr. Jacques Attie, which is also pending before this Court. *See* Case No. 4:25-mc-00537.

discovery obtained through this action to the underlying Swiss Proceeding (*see infra* § II.C.).

## I. THE COURT SHOULD PERMIT ENI US TO INTERVENE.

"[S]tanding to oppose subpoenas issued under § 1782 is [not] limited to the subpoenaed witness." *In re Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997). Third parties with an interest in the subject of the subpoena may intervene to "challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself." *In re Hunan Sokan New Materials Co., Ltd.,* 2024 WL 3670195, at *2 (W.D. Tex. 2024); *see also In re Thales DIS AIS Deutschland GmbH*, 2022 WL 717280, at *1 (N.D. Tex. Mar. 10, 2022); *In re Kuwait Ports Auth*., 2021 WL 5909999, at *5 (S.D.N.Y. Dec. 13, 2021).

Under Rule 24(a), a court must grant intervention where (i) the application is timely; (ii) the applicant claims "an interest relating to the property or transaction which is the subject of the action"; (iii) the applicant is "so situated that the disposition of the action may as a practical matter impair or impede movant's ability to protect its interest"; and (iv) the applicant's interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a). Rule 24's requirements are broadly interpreted in favor of intervention. *See, e.g.*, *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865 (5th Cir. 2019). Here, the statutory requirements for intervention as of right are met.

*First*, Eni US's Motion to Intervene is timely because it comes at the same time as Respondent's Motion to Quash (ECF No. 14) and will not delay or prejudice the adjudication of any party's rights. *See Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512-13 (5th Cir. 2016).

*Second*, Eni US has an interest in this Application because PSA has partly based it on "[Respondent's] employment with[] Eni," MOL, ECF No. 2, p. 5, and entirely based it on the same Swiss Proceeding that gives rise to a § 1782 application directed at Eni US.

*Third*, disposition of this action may, as a practical matter, "impair or impede" Eni US's ability to protect its interests. The subpoenas served on Mr. Idenov and Eni US are materially

identical; not only do both seek to anchor the discovery in the same Swiss Proceeding, they also seek virtually the same categories of documents over the same time period related to the same purported events in Kazakhstan. *Compare* the terms of the Order granting *ex parte* discovery in the Idenov § 1782 Proceeding (Case No. 4:25-mc-00536—ECF No. 3) and the Order issued in the Eni US § 1782 Proceeding (Case No. 4:25-mc-00538—ECF No. 3).

*Fourth*, no existing party represents Eni US's interests in this matter. While Mr. Idenov may seek similar or overlapping relief in seeking to quash the Idenov Subpoena, only Eni US can adequately demonstrate the full factual and legal issues common to these substantively identical § 1782 proceedings.

Alternatively, the Court should allow Eni US to intervene permissively because it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts have routinely granted motions to intervene in § 1782 proceedings under Rule 24(b). *See, e.g.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297, 304 (2d Cir. 2011). As with intervention as of right, permissive intervention is to be liberally construed in favor of intervention. *8fig, Incorporated v. Stepup Funny, L.L.C.*, 135 F.4th 285, 290 (5th Cir. 2025). Permissive intervention under Rule 24(b) is appropriate where, as here, (i) the application is timely; (ii) the applicant has a claim or defense that shares a common question of law or fact with the instant action; and (iii) there will be no undue delay or prejudice to the original parties. *Doucet v. Boardwalk Pipelines*, 2020 WL 1078871 (S.D. Tex., Dec. 28, 2020). The Fifth Circuit has instructed that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).

*First*, and for the reasons discussed above, there is no question of untimeliness, prejudice, or delay. Eni US moves to intervene and quash on precisely the same schedule as PSA agreed to

allow Mr. Idenov to file his own Motion to Quash. *See* ECF Nos. 6 & 10. *Second*, again as discussed above, there exist common questions of law or fact on account of the near identical subpoenas served on Mr. Idenov and Eni US. Unsurprisingly, Eni US raises here many of the same arguments against the Idenov Subpoena that it will raise against the subpoenas served on it, which go directly to the statutory (*see infra* II.B.1.) and discretionary (*see infra* II.B.2.) factors that are necessary to test the propriety of these subpoenas. *See In re Grupo Unidos por el Canal*, 2015 WL 1815251, at *5 (N.D. Cal., April 21, 2015) (where an intervenor's motion to intervene and to quash "share[s] many common questions of law and fact with [the] underlying Section 1782 application, i.e., whether [a] request for discovery meets the statutory requirements of 28 U.S.C. § 1782, and, if so, whether the discretionary factors identified in *Intel* . . . counsel in favor of granting [the] application," then permissive intervention is warranted).

## II. THE COURT SHOULD QUASH THE IDENOV SUBPOENA AND VACATE ITS *EX PARTE* ORDER

Section 1782 gives federal district courts the discretion to order discovery for use in foreign proceedings in accordance with the Federal Rules of Civil Procedure. The court *may* grant discovery under § 1782 upon finding that three statutory prerequisites are met: (i) the person or entity from whom discovery is sought "resides or is found" in the jurisdiction; (ii) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (iii) the application is "made . . . upon the application of any interested person." *Tex. Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548, 553 (5th Cir. 2012). From there, the court must further consider several discretionary factors: (i) "when the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal [and] character of the proceedings"; (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) whether the request is "unduly intrusive or burdensome."

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-265 (2004).

The Idenov Subpoena fails at the threshold[2] because PSA cannot satisfy the statutory requirement that the discovery be "for use" in a qualifying foreign proceeding. *See infra* § II.A. Moreover, one of the *Intel* discretionary factors weighs decidedly against the Application here. *See infra* § II.B.

### A. The Evidence is Not Being Sought "For Use in a Proceeding Before a Foreign or International Tribunal"

PSA's Application fails the second statutory requirement under § 1782 because the requested discovery is not "for use" in a qualifying "proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). To satisfy the "for use" requirement, the applicant must show that the discovery sought is something that "will be employed with some advantage or serve some use in the [foreign] proceeding." *In re Accent Delight Int'l Ltd. v. Warren Adelson et al.*, 869 F.3d 121, 132 (2d Cir. 2017). In other words, the discovery must be relevant to the subject matter of the foreign proceeding and increase the applicant's chances of success in the proceeding. *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015).

There are numerous indications that that the discovery sought in the Application is not actually "for use" in the Swiss Proceeding.

*First*, the timing makes the point. PSA knew or should have known of the corruption allegations referenced in the Swiss Proceeding when the Milan investigations became public knowledge in 2016 (and that is putting aside the fact that the Republic of Kazakhstan commenced

[2] Because Mr. Idenov represents in his Motion to Quash that he "has to responsive documents to produce," ECF No. 14, "the court's analysis need go no further" and the subpoena should be quashed and the order vacated. *See, e.g.*, *In re Application of Fourworld Event Opportunities Fund, L.P.*, 2023 WL 3375140, at *1 (S.D.N.Y. May 11, 2023) (citing *In re Liverpool Ltd. P'ship*, 2021 WL 5605044, at *2 (S.D.N.Y. Nov. 24, 2021) (quoting Fed. R. Civ. P. 34(a)(1) and 45(a)(1)(A)(iii)).

its own investigation into the awarding of contracts at the Kashagan Project back in 2007). *See supra* at Background § II. Yet PSA waited almost a decade before instigating the Swiss Proceeding in March 2025, and then, a mere *five days later*, filed three substantively identical § 1782 applications in this Court. PSA also fails to disclose that the same allegations have been raised by the Republic of Kazakhstan in the ongoing Arbitrations, which, as explained below, cannot serve as the basis for § 1782 discovery in light of the Supreme Court's 2022 decision in *ZF Automotive.*

*Second*, the Application is premature because PSA has the ability to obtain relevant and material evidence in the Swiss Proceeding itself. The litigation has not even officially begun there: the case is still in its preliminary conciliation phase, which is only "intended to serve as a settlement forum." *See* Burrus Declaration, ¶ 11. The defendants are then likely to raise threshold issues such as jurisdictional objections or statute of limitations defenses. Burrus Declaration, ¶¶ 17-19. Only then would the Swiss court turn to the merits. Burrus Declaration, ¶¶ 14-15. To the extent that documents or testimony of the parties or third parties are deemed relevant and material to the case, the Swiss courts have the power to order their production, whether in Switzerland or abroad. *See also, Id.*, § V.C. In all events, PSA can submit evidence throughout the merits stage of the Swiss Proceeding, which has not yet even begun, and which will likely be measured in years rather than months. Burrus Declaration, ¶ 7.b. In short, there is simply no reason for PSA to be pushing these Applications now, if not for some ulterior motive.

*Third*, the amounts in dispute belie the *bona fides* of the Swiss Proceeding. In its Request for Conciliation, PSA has alleged only "14 million EUR" in damage as a result of the alleged corruption scheme. *See* Request for Conciliation, ECF No. 2-4 p. 2, ¶ 1. By comparison, these same allegations are part of the Arbitrations in which the Republic of Kazakhstan is reported seeking the staggering sum of $150 *billion*. *See supra* at Background § III. At best the Swiss

Proceedings are of marginal consequence to the overall dispute between the Republic of Kazakhstan and the consortia members at the Projects, including the Eni group.

The natural implication is that PSA intends for the § 1782 discovery sought here to be "use[d]" in the Arbitrations, which is impermissible under the Supreme Court's recent decision in *ZF Automotive*. There, the Court held that "private adjudicatory bodies"—like private commercial international arbitral tribunals—do not "count as 'foreign or international tribunals'" for purposes of § 1782. *ZF Automotive*, at 623. In so holding, the Supreme Court affirmed longstanding precedent in the Second Circuit, which had previously held that where an applicant is seeking § 1782 discovery for use in an unauthorized tribunal, "evidence of such chicanery" should be brought to the court's attention. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d. Cir. 2017). Yet PSA has neither acknowledged the Arbitrations nor disclaimed the use of the requested § 1782 discovery in them.

In sum, the Arbitrations are the only adjudicatory processes which could presumably consider this evidence in the near term and thus the actual forum where PSA intends to "use" the evidence it seeks. This, as the Second Circuit put it, is precisely the sort of "chicanery" that should not be countenanced.

### B. The Application is Intended to "Circumvent Foreign Proof-Gathering Restrictions"

The third *Intel* factor also strongly cuts against the Application, because it is an evident "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, at 264-265. Although there is no "foreign discoverability" rule under § 1782, the Supreme Court has instructed that district courts consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264. "Thus, while the court should not base its §

1782(a) decision on whether this discovery would be allowed in [the foreign court], it may consider [that foreign court's] restrictions and whether this request is an attempt to thwart th[em]." *In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*, 195 F. Supp. 3d 899, 906 (S.D. Tex. 2016).

Circumvention will be found where, as here, the application pursues § 1782 discovery before any attempted discovery in the foreign proceeding, *see In re Application of Caratube Int'l Oil Co. LLP*, 730 F. Supp. 2d 101, 107-108 (D.D.C. 2010). The Swiss Proceeding is not even close to a stage where discovery can be sought, and Applicant's own sworn declaration on Swiss law admits that PSA will eventually be able to "petition [the] Swiss court to order . . . a third party to disclose specifically identified documents or data in its possession." Neyroud Declaration, ECF No. 2-1 p. 9, ¶ 23. *See also* Burrus Declaration, §V.C. Given the breadth and intrusiveness of PSA's discovery requests, the subpoenas issued by Applicant in the three virtually identical § 1782 applications "would likely be deemed a prohibited fishing expedition by Swiss courts." Burrus Declaration, ¶ 7.d. The Application is thus an obvious attempt to evade Swiss restrictions on evidence production. *In re Application of RSM Prod. Corp.*, 195 F. Supp. 3d at 906.

What's more, documents relating to these same corruption allegations have been obtained from various Eni entities over the course of multiple investigations by Italian and Kazakhstani authorities, with no charges ever being brought. *See supra* at Background § II. The Republic of Kazakhstan also has the ability to obtain document production in the Arbitrations, which are reportedly governed by the United Nations Commission on International Trade Law (***UNCITRAL***) Arbitration Rules. *See* Exhibit 14; and 2021 UNCITRAL Arbitration Rules, Art. 27.3 (authorizing the arbitral tribunal to "require[] parties to produce documents, exhibits or other evidence"). Given the numerous opportunities that PSA has had and still does have to obtain evidence relating to its stale allegations, its § 1782 Application can only be seen as an affront to the "policies [of] the

United States"—including those reflected in the Supreme Court's decision in *ZF Automotive*.

## III. ANY DISCOVERY SHOULD BE RELEVANT AND EXPRESSLY LIMITED TO THE UNDERLYING SWISS PROCEEDINGS

"The reference to the Federal Rules of Civil Procedure in Section 1782 suggests that . . . the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Application of Time, Inc.*, 1999 WL 804090, at *6 (E.D. La., Oct. 6, 1999). This means that discovery under the statute must be "relevant to the subject matter involved in the pending [foreign] action." *Id.* at *7.

This Court should thus stay the return of the Idenov Subpoena until the Swiss Proceeding has progressed to stage where relevance can be properly assessed—for example, after the statement of claim is filed in Switzerland, the Swiss court resolves any threshold issues, and the defendants have had the opportunity to file their respective responses. This will bring into focus what claims may be time-barred, what defendants remain in the case, and thus what evidence (if any) is relevant to the merits of the Swiss Proceeding. This is consistent with the position taken recently by the Seventh Circuit in an analogous case. *In Re Application of Venequip, SA v. Caterpillar Inc.*, 83 F.4d 1048 (7th Cir. 2023). In that case, Venequip initiated litigation in Geneva and, while the relevant Swiss proceedings were still in the conciliation phase, "filed a flurry of applications in federal district courts across the United States seeking broad discovery under 28 U.S.C. § 1782(a) from Caterpillar and its employees, dealers, and customers," including in the Northern District of Illinois. *Id.* at 1051. Applying the discretionary factors outlined in *Intel*, the district court denied the application, finding that discovery was not warranted at that time, and inviting Venequip to return to that Court at later time, once the relevant Swiss proceeding had matured. *See Venequip, S.A. v. Caterpillar, Inc.*, 2022 WL 823856, at *3 (N.D.Ill., 2022). The Seventh Circuit later affirmed, recognizing among other things that "that Venequip had cast a very

wide net in its § 1782(a) request" and that "Swiss courts would likely be wary of the timing and breadth of American-style discovery." *Id.* at 1058. Noting that "the district court enjoys broad discretion when deciding whether, and to what extent, to provide discovery assistance under § 1782(a)," the Seventh Circuit observed that the "[district court]'s decision here rests on case-specific inputs carrying different weights and degrees of importance." *Id.* at 1056, 1058.

If any documents or testimony are divulged pursuant to the Idenov Subpoena, this Court should then enter a protective order to restrain PSA from using the evidence produced in connection with any proceedings other than the Swiss Proceeding. *See Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012) (noting that, once a § 1782 application is granted, "[t]he manner in which discovery proceeds will be determined by normal discovery rules"); *In re Accent Delight Int'l Ltd.*, 869 F.3d at 135 (2d Cir. 2017) (evidence suggesting a party instituted sham litigation as a cover to obtain § 1782 discovery "could provide good cause for entry of a protective order prohibiting use of the discovery in other proceedings"); *In re Crédito*, 2023 WL 5016497, at *10 (S.D.N.Y., May 24, 2023) (limiting the use of materials gleaned from Section 1782 discovery to specific foreign proceedings and ordering "the parties [to] be given the opportunity to negotiate an appropriate protective order that incorporates this limitation"); *In re Caterpillar Crédito*, 2023 WL 6317913 (D. Del., 2023) (granting restricted use of § 1782 discovery to a specific litigation and not in a related arbitration). If the Swiss Proceeding is truly the intended forum for the § 1782 discovery, PSA should have no issue with this suggestion.

## CONCLUSION

For the foregoing reasons, Eni US respectfully requests that the Court grant its motion to intervene, vacate its Order of April 3, 2025 (ECF No. 3), and quash or stay the return of the Idenov Subpoena. At the very least and in the alternative, Eni US requests that, to the extent any discovery

is ordered, it should be subject to a protective order that limits the use of any discovery obtained to the Swiss Proceeding.

Dated: May 30, 2025

Respectfully submitted,

/s/ *Luke A. Sobota*
Luke A. Sobota (*pro hac vice*)
Attorney-in-Charge
Three Crowns LLP
3000 K Street, NW Ste. 101
Washington, DC, 20007
(202) 540-9477
Email: luke.sobota@threecrownsllp.com

*Counsel for Proposed Intervenor, Eni US Operating Co. Inc.*

## CERTFICATE OF CONFERENCE

Pursuant to the Court's Procedures and Practices, Section B.5(c), I hereby certify that counsel for Eni US has met and conferred with counsel for Mr. Idenov, who has consented to intervention. Counsel for Eni US also exchanged emails with counsel for PSA on May 29 and 30, 2025, to confer on intervention, and PSA opposed Eni US's request to intervene in a final email sent to counsel for Eni US on May 30, 2025, at 7:56am CDT.

/s/ *Luke A. Sobota*
Luke A. Sobota (*pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that, on May 30, 2025, I electronically filed the foregoing document with the Clerk of the Court, using the electronic case filing system of the Court. A true and correct copy of the foregoing document has been forwarded to all attorneys of record via the Court's system on this date.

Nicoleta Timofti, Lead Attorney, Attorney to be Noticed
*Pro hac vice*
Squire Patton Boggs (US) LLP
Rue du Rhone 67
Geneva, Switzerland 1207
Telephone: (202) 716-1340
Email: nicoleta.timofti@squirepb.com

Amanda D. Price, Attorney to be Noticed
Texas State Bar No. 24060935
S.D. No. 1155447
Squire Patton Boggs (US) LLP
600 Travis Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 546-5850
Facsimile: (713) 546-5830
Email: amanda.price@squirepb.com

*Counsel for Applicant, PSA LLC*

Paul Wiliiam Butler, Lead Attorney, Attorney to be Noticed
*Pro hac vice*
Butler Legal Strategies PLLC
1201 Connecticut Avenue NW
Ste 531 #645922
Washington, DC 20036
Telephone: (202) 390-3905
Email: paul@butlerlegalstrategies.com

Matt Hennessy, Attorney to be Noticed
Gerger Hennessy Martin & Peterson LLP
700 Louisiana St.
Suite 2300
Houston, TX 77002
Telephone: (713) 224-4400
Email: mhennessy@gkfirm.com

*Counsel for Respondent, Maksat Idenov*

/s/ *Luke A. Sobota*
Luke A. Sobota (*pro hac vice*)